**G. Kevin Kiely, OSB No. 833950**
gkkiely@cablehuston.com
**Carla Scott, OSB No. 054725**
cscott@cablehuston.com
**Gretchen S. Barnes, OSB No. 032697**
gbarnes@cablehuston.com
CABLE HUSTON BENEDICT HAAGENSEN & LLOYD LLP
1001 SW Fifth Avenue, Suite 2000
Portland, OR  97204-1136
Telephone:  (503) 224-3092
Facsimile:  (503) 224-3176

Of Attorneys for Plaintiff AmeriTitle, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| AMERITITLE, INC., an Oregon corporation, | Civil No. 2:09-cv-318 SU |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | **Request for Oral Argument** |
| GILLIAM COUNTY; FRANK BETTENCOURT, in his official capacity as Gilliam County Commissioner; MICHAEL WEIMAR, in his official capacity as Gilliam County Commissioner; and PATRICIA SHAW, in her official capacity as Gilliam County Judge, | |
| Defendants. | |

TITLE PAGE

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................ 1

      A.    Overview Of Oregon's Enterprise Zone Act ............................................ 1

            (1)   Oregon's Enterprise Zone Act Was Promulgated To Stimulate
                  Economies Where Geography May Act As An Economic Hindrance ....... 1

            (2)   Over a Decade Ago, the Oregon Attorney General Opined that
                  Receipt of Tax Incentives May Not Lawfully be Conditioned on
                  Compliance With Discriminatory, Local-Hiring Requirements................. 3

            (3)   The Oregon Legislature Subsequently Amended the Act to Prohibit
                  Conditioning Receipt Of Tax Benefits On Explicit Discrimination........... 4

      B.    The Pebble Springs SIP Agreement Conditions Receipt of Preferential
            Tax Treatment On Compliance With A "Local Contractor Requirement" ............ 5

      C.    The Local Contractor Requirement Precluded AmeriTitle From Doing
            Work Related to the Projects in Gilliam County .................................... 7

III.  SUMMARY JUDGMENT STANDARD ........................................................ 8

IV.   ARGUMENT........................................................................................ 8

      A.    The Local Contractor Requirement Violates The Commerce Clause
            Because It Is Simple Economic Protectionism Lacking Any Legitimate
            Governmental Purpose........................................................................ 8

            (1)   The Local Contractor Requirement affirmatively discriminates—
                  both on its face and in practical effect—against interstate
                  commerce ................................................................................ 10

            (2)   Gilliam County cannot show that the Local Contractor Requirement
                  furthers a legitimate governmental purpose or that any legitimate
                  purpose could not be served by nondiscriminatory means ..................... 11

            (3)   The "Market Participant Exception" does not apply because
                  Gilliam acted solely in its governmental capacity, *not* as a
                  buyer or seller .......................................................................... 14

      B.    The Local Contractor Requirement Also Violates The Equal
            Protection Clause .............................................................................. 15

      C.    Gilliam County Also Exceeded Its Statutory Authority And Acted
            Contrary To An Express Prohibition In The Act's Implementing
            Regulations ...................................................................................... 17

D.    The Unconstitutional And Illegal Local Contractor Requirement Also
Constitutes "Improper Means," An Element Of AmeriTitle's
Claim For Intentional Interference With Prospective Economic Relations.......... 18

V.    CONCLUSION.................................................................................................................. 19

# TABLE OF AUTHORITIES

Page

**Cases**

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383 (1994) ..................................... 9

*Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 592 (1997) ........................... 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) .............................................................. 7

*City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ........................................................ 15

*Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002) ...................................................... 16, 17

*Dean Milk Co. v. Madison*, 340 U.S. 349 (1951) ...................................................................... 9

*Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*,
504 U.S. 353, 361 (1992).......................................................................................................... 9

*Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1961) ..................................................................... 4

*Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979) ....................................................................... 9

*Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) ......................................................... 13

*Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35 (1980) ............................................... 8

*Maine v. Taylor*, 477 U.S. 131, 137 (1986) .......................................................................... 8, 9

*McGanty v. Staudenraus*, 321 Or. 532, 535 (1995) ................................................................ 18

*Merrifield v. Lockyer*, 547 F.3d 978, 991 n.5 (9th Cir. 2008) ............................................ 16, 17

*New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 274 (1988) ................................ 10, 11, 14

*Nordyke v. King*, 563 F.3d 439, 463 (9th Cir. 2009) ............................................................... 15

*Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999) ........................... 18

*Oregon Waste Systems, Inc. v. Dept. of Envtl. Quality*,
511 U.S. 93, 99-101 (1994) .................................................................................... 8, 9, 10, 11

*Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*,
128 F.3d 910 (5th Cir.1997) ............................................................................ 10, 11, 12, 15

*Reeves, Inc. v. Stake*, 447 U.S. 429, 436-437 (1980)............................................................... 14

*Regents of University of California v. Bakke*, 438 U.S. 265, 340 (1978) .................................... 15

*South Carolina State Highway Dept. v. Barnwell Bros.*, 303 U.S. 177, 185 (1938)..................... 8

*South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 97 (1984)........................... 8

*Toomer v. Witsell*, 334 U.S. 385, 403-406 (1948) .......................................................... 8

*Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 209-10 (1978)............................. 18

*United Building & Constr. Trades v. Mayor*, 465 U.S. 208, 217-18 (1984) ................... 9

*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).... 8

*White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204, 208 (1983) ............. 14

*Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992) ................................................. 10, 11

## Statutes

ORS 285C ............................................................................................................. 1

ORS 285C.135 .................................................................................................... 2

ORS 285C.200 .................................................................................................... 2

ORS 285C.250 .................................................................................................... 2

ORS 285.570(5) .................................................................................................. 4

ORS 285.605........................................................................................................ 3, 4

ORS 285C.050 .................................................................................................... 2

ORS 285C.055 ..................................................................................................... 1, 10

ORS 285C.090 .................................................................................................... 2

ORS 285C.170 .................................................................................................... 2

ORS 285C.600-620.............................................................................................. 4

ORS 285C.603 .................................................................................................... 2

ORS 731.438........................................................................................................ 6

## Rules

Fed. R. Civ. P. 56(c) ........................................................................................... 7

Fed. R. Civ. P. 56(d)(2)....................................................................................... 8

OAR 123-023-1300 ............................................................................................. 4, 17

OAR 123-023-3100 ............................................................................................. 5

## Constitutional Provisions

U.S. Const., Art I, § 8, cl. 3................................................................................. 8

U.S. Const. amend. XIV, § 1 .............................................................................. 15

## Administrative Decisions

47 Or. Op. Atty. Gen. 243, Opinion No. 8236, 1995 WL 242546 .................................. 3

## I.    INTRODUCTION

This motion for partial summary judgment seeks a ruling invalidating a clear-cut act of unconstitutional protectionism by Gilliam County in favor of local businesses to the detriment of non-local businesses.  As a condition of preferential tax treatment under the Oregon Enterprise Zone Act (the "Act"), Gilliam County imposed in a Strategic Investment Program Agreement a mandatory 10 percent bid preference for so-called "local contractors."  To be considered a "local contractor," the contractor must have its principal place of business in Gilliam County for one year or longer from the date of any bid submitted to Pebble Springs Wind, LLC or any of its affiliates (collectively, "Pebble Springs").

Both on its face and as applied, this discriminatory condition (referred to herein as the "Local Contractor Requirement") violates both the Commerce and Equal Protection Clauses of the United States Constitution.  In addition, by imposing the Local Contractor Requirement as a condition to receiving preferential tax treatment, Gilliam County acted contrary to an express prohibition in the Act's  implementing regulations.  For these reasons, AmeriTitle, Inc. ("AmeriTitle") is entitled to partial summary judgment as a matter of law invalidating the Local Contract Requirement as an unconstitutional and illegal, *ultra vires* act.  AmeriTitle is also entitled to partial summary judgment as a matter of law that the unconstitutional and illegal Local Contractor Requirement constitutes an "improper means" for purposes of its claim for intentional interference with prospective economic relations.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Overview Of Oregon's Enterprise Zone Act

#### (1)    Oregon's Enterprise Zone Act Was Promulgated To Stimulate Economies Where Geography May Act As An Economic Hindrance

The Oregon Enterprise Zone Act, ORS Chapter 285C (the "Act") authorizes local governments to grant preferential tax treatment to attract new private business investment or to help bolster existing businesses in designated "enterprise zones."   ORS 285C.055 provides:

Page 1 -  MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

> The Legislative Assembly finds and declares that the health, safety
> and welfare of the people of this state are dependent upon the
> continued encouragement, development, growth and expansion of
> employment, business, industry and commerce throughout all
> regions of the state, but especially in those communities at the
> center of or outside major metropolitan areas for which geography
> may act as an economic hindrance. The Legislative Assembly
> further declares that there are areas in the state that need the
> particular attention of government to help attract private business
> investment into these areas and to help resident businesses to
> reinvest and grow and that many local governments wish to have
> tax incentives and other assistance available to stimulate sound
> business investments that support and improve the quality of life.
> Therefore, it is declared to be the purpose of ORS 285C.050 to
> 285C.250 to stimulate and protect economic success in such areas
> of the state by providing tax incentives for employment, business,
> industry and commerce and by providing adequate levels of
> complementary assistance to community strategies for such
> interrelated goals as environmental protection, growth
> management and efficient infrastructure

Under the Act, local governments in specified enterprise zones may offer tax incentives
or other assistance to certain new or existing businesses. ORS 285C.090; 285C.135 285C.200.
Specifically, businesses that locate or expand in such enterprise zones may receive an exemption
from the property taxes typically assessed on new plant and equipment. *See, e.g.,* ORS
285C.170.

The Act further authorizes local governments to enter into Strategic Investment Program
Agreements ("SIP Agreements") as a condition of preferential tax treatment "to improve
employment in areas where eligible projects are to be located," and to encourage "business firms
that will benefit from an eligible project to hire employees from the region in which the eligible
project is to be located whenever practicable." ORS 285C.603.

/ / /

/ / /

/ / /

/ / /

Page 2 -   MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
           PARTIAL SUMMARY JUDGMENT

(2)    **Over a Decade Ago, the Oregon Attorney General Opined that Receipt of Tax Incentives May Not Lawfully be Conditioned on Compliance With Discriminatory, Local-Hiring Requirements**

In 1995, the Oregon Attorney General issued a formal opinion explaining that former ORS 285.605—which contained a "local hiring" requirement—was unconstitutional under the Privileges and Immunities Clause. 47 Or. Op. Atty. Gen. 243, Opinion No. 8236, 1995 WL 242546.[1]

Former ORS 285.605 provided that an eligible business must hire a certain number of residents from a certain area in order to receive preferential tax treatment. The Attorney General explained that, in general, the Act's purpose is to encourage businesses to locate in certain zones, thereby creating jobs and reducing unemployment. 47 Or. Op. Atty. Gen. 243. However, the Attorney General opined that imposing a local hiring condition on receiving a property tax exemption was an unconstitutional means of achieving that purpose. The Attorney General concluded that there is no reasonable relationship between discrimination against nonresidents and the supposed evil the Act is designed to remedy. 47 Or. Op. Atty. Gen. 243. The Attorney General reasoned that "it is not evident that hiring nonresidents negatively impacts economic development in Oregon or reduces the income of Oregonians or that nonresidents are the cause of unemployment within enterprise zones." *Id.*

In addition, the Attorney General rejected any argument that the local hiring requirement could survive a constitutional challenge on grounds that it does not "require" private employers to hire residents, but merely "encourages" them to do so through tax benefits. Although there is no doubt that a state lawfully may provide tax incentives to private businesses to locate in particular areas of the state, the state may not compel private businesses to discriminate against nonresidents as a condition for receiving tax benefits: "we do not believe that the state may use tax incentives to achieve indirectly the type of discriminatory hiring that the constitution

---

[1] A copy of this Attorney General Opinion is at Attachment A to this Memorandum.

Page 3 -   MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

prohibits the state from doing directly." *Id.* (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1961) ("When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right.")).

The Oregon Attorney General offered alternative methods that may lawfully be used to achieve the Act's purpose:

> [W]e believe that the state could condition the receipt of tax exemptions on the eligible businesses' using certain hiring requirements so long as those requirements were not based on residency. For example, the Act could require a business not only to enter into a First-Source Hiring Agreement between the business and a publicly funded job training provider, ORS 285.570(5), but also to hire a certain number of qualified workers who are referred pursuant to that Agreement.

*Id.*

### (3)    The Oregon Legislature Subsequently Amended the Act to Prohibit Conditioning Receipt Of Tax Benefits On Explicit Discrimination

After the Attorney General opined that the local hiring requirement in former ORS 285.605 was unconstitutional, the Oregon legislature struck it from the Act. *See* ORS 285C.600-620.

Implementing this current version of the Act, the Oregon Economic and Community Development Commission promulgated OAR 123-023-1300, which instructs Counties as follows:

> (1) Prospective Applicants and County/local governments shall consider creative and cooperative means to promote gainful work for persons already residing in the proximate area or region of the Approved Project for:
>
> (a) Jobs associated with the applicable facility or operations; and
>
> (b) Persons employed in the construction or installation of property or by other types of contractors, vendors or suppliers related to the project or its operation.

Page 4 -   MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

(2) County/local governments shall incorporate such means in a policy and standards for the designation of an SIZ, as otherwise permissible and administrable, in relation to OAR 123-023-3100.

(3) Such means shall not create any:

(a) Undue burden on the Applicant, relative to the nature, needs or competitiveness of the Approved Project; or

(b) *Explicit bias against anyone's rights or access to the privilege of employment, such as specifying residency-based hiring criteria proscribed by OP-8236, Oregon Attorney General (April 20, 1995).*

(Emphasis added).[2]

### B. The Pebble Springs SIP Agreement Conditions Receipt of Preferential Tax Treatment On Compliance With A "Local Contractor Requirement"

Pebble Springs, LLC is a wind-farm developer. Pebble Springs LLC, and its affiliate Iberdrola Renewables, Inc., (collectively "Pebble Springs") sought to develop wind energy generation projects commonly known as "Pebble Springs," "Leaning Juniper II" and "Leaning Juniper III" (collectively, the "Projects") in Gilliam County. Pebble Springs applied for property tax abatement for the Projects under the Act. AmeriTitle's Concise Statement of Material Facts ("CSMF") ¶ 1. As a condition to receiving this preferential tax treatment, Gilliam County required Pebble Springs to execute a Strategic Investment Program Agreement (the "Pebble Springs SIP Agreement"). CSMF ¶ 1. The Pebble Springs SIP Agreement is dated effective October 1, 2008. CSMF ¶ 1.

The Pebble Springs SIP Agreement includes a provision that requires Pebble Springs and its affiliates to give mandatory preference to bids from "local contractors" in all contractor hiring for the Projects (the "Local Contractor Requirement"). *Id.* The Local Contractor Requirement states:

/ / /

/ / /

---

[2] A copy of OAR 123-023-1300 is at Attachment B to this Memorandum.

Page 5 -  MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Bidding Requirements**. For contractors selected subsequent to the execution of this agreement, Pebble Springs LLC shall invite contractors to participate in competitive bidding. When considering competitive bids, Pebble Springs LLC will give qualified local contractors preference of up to ten percent (10%) for contract values less than $250,000 and up to five percent (5%) for contract values $250,000 and higher. For the avoidance of doubt, a preference of up to 10% (or 5%) means that Pebble Springs LLC may accept an otherwise acceptable bid from a local contractor up to 110% (or 105%) of the lowest acceptable bid, and the contract value will be determined by the lowest acceptable bid. A contractor shall be considered local if it certifies in its bid application that its principal place of business has been in Gilliam County for one year or longer from the date of the bid. Pebble Springs LLC may rely on the certification for purposes of this provision and shall have no duty to investigate the accuracy of the certification. Pebble Springs LLC will inform prospective bidders that local contractors will be given the foregoing preferences. Pebble Springs LLC may require a performance and payment bond in form and surety satisfactory to Pebble Springs LLC in the amount of the contract price. Notwithstanding anything in this section 4.i., Pebble Springs LLC shall not be obligated to select any contractor unless the contractor has demonstrated to Pebble Springs LLC's satisfaction in Pebble Springs LLC's sole discretion that the contractor meets the qualifications set forth in the bid request. In the event the County Commission feels a local contractor was not selected, but should have been, then IBERDROLA LLC and the County will meet to seek to resolve the issue.

CSMF ¶ 2.

In summary, the Local Contractor Requirement provides that Pebble Springs *must* accept "an otherwise acceptable bid from a local contractor up to 110% (or 105%) of the lowest bid." *Id.* A "local contractor" can only be an entity that "certifies in its bid application that its principal place of business has been in Gilliam County for one year or longer from the date of the bid." *Id.*

/ / /

/ / /

/ / /

Page 6 -  MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**C.     The Local Contractor Requirement Precluded AmeriTitle From Doing Work Related to the Projects in Gilliam County**

AmeriTitle, an Oregon title company authorized to do title business in Gilliam County,[3] submitted a bid to issue title insurance for the Projects. AmeriTitle has substantial experience with insuring wind generation projects in Oregon. CSMF ¶ 6. Nevertheless, AmeriTitle is not a "local contractor"—as that term is defined by Gilliam County. CSMF ¶ 8.

On or about February 18, 2009, AmeriTitle received via email a letter addressed to its White Salmon, Washington office with the reference line: "RFP for the Title Policy on the Leaning Juniper II Wind Project" (the "Leaning Juniper RFP"). CSMF ¶ 6. The Leaning Juniper RFP required AmeriTitle to provide a title insurance bid response by close of business on February 27, 2009. According to the Leaning Juniper RFP, the total projected cost of the Leaning Juniper II Wind farm project, to be constructed in two phases, is $499,000,000. *Id.*

AmeriTitle submitted a detailed response bid to the Leaning Juniper RFP by email letter dated February 26, 2009. CSMF ¶ 7.

On or about March 10, 2009, Pebble Springs, through its counsel, informed AmeriTitle that its bid could not be considered for the Leaning Juniper projects because AmeriTitle did not satisfy Gilliam County's Local Contractor Requirement in the Pebble Springs SIP Agreement:

> [Pebble Springs' parent company] is going with First American and Gilliam County Title for the Leaning Juniper IIA and IIB projects. The reason is the county's local participation requirement. If AmeriTitle had an office in the county and would otherwise satisfy these requirements, the discussion may have been different. While my client will not be able to work with you on this project, I encourage you to correct this situation so that you will be able to compete for future business.

CSMF ¶ 8.

---

[3] AmeriTitle owns and maintains qualified and conforming title plants for 22 counties in Oregon, including Gilliam, Sherman, Morrow and Wasco counties, pursuant to ORS 731.438. AmeriTitle also has existing offices nearby, in Heppner, Pendleton, Umatilla and The Dalles. AmeriTitle also conducts title business throughout Washington and Idaho. CSMF ¶ 7.

Page 7 -  MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where, as here, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989). An interlocutory summary judgment may be rendered by the Court on liability alone, even if there is a genuine issue of material fact on other elements such as the amount of damages. Fed. R. Civ. P. 56(d)(2).

### IV.    ARGUMENT

#### A.    The Local Contractor Requirement Violates The Commerce Clause Because It Is Simple Economic Protectionism Lacking Any Legitimate Governmental Purpose

The Commerce Clause of the United States Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art I, § 8, cl. 3. "'Although the Clause thus speaks in terms of powers bestowed upon Congress, the Supreme Court long has recognized that it also limits the power of the States to erect barriers against interstate trade.'" *Maine v. Taylor*, 477 U.S. 131, 137 (1986) (quoting *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 35 (1980)). The Supreme Court has repeatedly made clear that "where simple economic protectionism is effected" by State action,[4] a

---

[4] State statutes, regulations and contracts are all state actions subject to the strictures of the Commerce Clause. *See South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 97 (1984) ("The State may not impose conditions, whether by statute, regulation, or contract, that have a substantial regulatory effect outside of that particular market.").

Page 8 -  MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

"virtually *per se* rule of invalidity has been erected." *Id*. at 624; *Toomer v. Witsell*, 334 U.S. 385, 403-406 (1948); *South Carolina State Highway Dept. v. Barnwell Bros.*, 303 U.S. 177, 185 (1938). For Commerce Clause purposes, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Oregon Waste Systems, Inc. v. Dept. of Envtl. Quality*, 511 U.S. 93, 99-101 (1994).[5]

"Discrimination" under the Commerce Clause occurs also where there is differential treatment that benefits economic interests within a municipality and burdens economic interests outside a municipality, even if both interests are within the same state. *See, e.g., C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383 (1994). In *C & A Carbone*, the Supreme Court invalidated as discriminatory a local ordinance requiring all solid waste to be processed by the sole, privately-owned solid waste processor located within the town. The party challenging the ordinance was another in-state entity. In striking down the ordinance, the Court stated: "The ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition." *Id.* (citing *Dean Milk Co. v. Madison*, 340 U.S. 349 (1951)); *see also Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*, 504 U.S. 353, 361 (1992) ("[O]ur prior cases teach that a State (or one of its political subdivisions) may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself.").[6]

---

[5] Notably, Gilliam County submitted briefs in the *Oregon Waste* case in which Gilliam County argued, successfully, that an Oregon taxing scheme violated the Commerce Clause because it facially discriminated against interstate commerce and lacked any legitimate purpose other than simple protectionism. *See* 1993 WL 639309 (U.S., Nov. 09, 1993); 1993 WL 639380 (U.S., Dec. 21, 1993).

[6] Like the Commerce Clause, discrimination under the Privileges and Immunities Clause of the United States Constitution does not make a distinction between a law discriminating based on residency in a state and those discriminating based on residence within a specified municipality within a State. *See, e.g., United Building & Constr. Trades v. Mayor*, 465 U.S. 208, 217-18 (1984); 47 Or. Op. Atty. Gen. 243, Opinion No. 8236 (1995) (explaining that the municipal residency requirement in the former version of the Oregon Enterprise Zone Act did not survive

Page 9 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
            PARTIAL SUMMARY JUDGMENT

In sum, under the Supreme Court's Commerce Clause jurisprudence, a State action that affirmatively discriminates, either facially or in practical effect, against interstate commerce is constitutionally valid *only* if the state shows that the law actually furthers a "legitimate local purpose" and that this purpose could not be served by other, available nondiscriminatory means. *Oregon Waste Systems, Inc.*, 511 U.S. at 99-101; *Maine v. Taylor*, 477 U.S. at 138; *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979). To be legitimate, the local purpose *must be **unrelated** to economic protectionism. Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992); *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 274 (1988). Indeed, "justifications for discriminatory restrictions on commerce must pass the 'strictest scrutiny.' The State's burden of justification is so heavy that facial discrimination by itself may be a fatal defect." *Oregon Waste Systems, Inc.*, 511 U.S. at 101.

### (1)    The Local Contractor Requirement affirmatively discriminates—both on its face and in practical effect—against interstate commerce

In *Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*, 128 F.3d 910 (5th Cir.1997), the Fifth Circuit addressed a discriminatory tax incentive program similar to the Local Contractor Requirement at issue here. The court in that case analyzed whether Louisiana's condition for receipt of an ad valorem tax exemption on "the preferential use of Louisiana construction products and labor when they are on parity with those produced by another state" violated the Commerce Clause. *Id.* at 917. The Fifth Circuit concluded that it did:

> [The Louisiana tax program] discriminates against interstate commerce both on its face and in practical effect. It is facially discriminatory, as tax exemption recipients and their contractors must give Louisiana products and labor preferential treatment all other factors being equal. The overall effect of [the Louisiana tax program] is discriminatory as it inhibits the ability of contractors to . . .utilize supplies and other resources produced by other states.

*Id.* at 918 (internal quotation marks omitted).

---

constitutional scrutiny under the Privileges and Immunities Clause merely because it conditioned receipt of the "tax exemption based not upon their residence in Oregon, but upon their residence within the zone, the urban growth boundary or the county").

Like the discriminatory Louisiana tax program at issue in *Pelican Chapter*, there can be no doubt that the Local Contractor Requirement discriminates against interstate commerce both on its face and in practical effect. The Local Contractor Requirement provides that unless a contractor can certify that it is a "local contractor," Pebble Springs must accept "an otherwise acceptable bid from a local contractor up to 110% (or 105%) of the lowest bid." *Id.* at § 4.h. The Pebble Springs SIP Agreement defines "local contractor" as an entity that "certifies in its bid application that its principal place of business has been in Gilliam County for one year or longer from the date of the bid." *Id.* Like the discriminatory tax program in *Pelican Chapter*, Pebble Springs must give bidding preference to local contractors over non-local contractors. Such a provision facially discriminates against non-local contractors in favor of local contractors. In addition, it is not surprising that the Local Contractor Requirement in fact had a discriminatory effect—Pebble Springs rejected AmeriTitle's bid *because* AmeriTitle was not a "local contractor" and instead accepted a bid from Gilliam County Title. CSMF ¶ 8.

> **(2)** **Gilliam County cannot show that the Local Contractor Requirement furthers a legitimate governmental purpose or that any legitimate purpose could not be served by nondiscriminatory means**

Where, as here, State action affirmatively discriminates against interstate commerce, the burden shifts to the defendants to point to a legitimate local purpose which could not be served as well by available nondiscriminatory means. *Oregon Waste Systems, Inc.*, 511 U.S. at 99-101; *Pelican Chapter*, 128 F.3d at 918. Simple protectionism—which is the only apparent purpose for the Local Contractor Requirement—is not a legitimate local purpose. *Wyoming*, 502 U.S. at 454; *New Energy Co. of Indiana*, 486 U.S. at 274.

For example, the court in *Pelican Chapter* explained that the asserted purpose of the Louisiana tax program—reducing unemployment in Louisiana—could not render it constitutional:

/ / /

/ / /

Page 11 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

> Reducing unemployment by discouraging the use of out-of-state
> labor and products constitutes the patent economic protectionism
> that the Commerce Clause forbids. Neither the power to tax nor
> the police power may be used by the state of destination with the
> aim and effect of establishing an economic barrier against
> competition with the products of another state or the labor of its
> residents. In addition, even if reducing unemployment in
> Louisiana were a legitimate local purpose, the defendants-
> appellants have not produced any evidence to demonstrate that [the
> Louisiana tax program] has actually served this purpose or that it
> could not be served as well by available nondiscriminatory means.

128 F.3d at 918 (internal citations omitted). Because the Louisiana discriminatory tax program

served "to further *no* end other than the economic welfare of Louisiana and discriminate[d]

against articles and services in interstate commerce" produced in another state, it was "a simple

measure of economic isolationism or protectionism that the United States Constitution forbids."

*Id.* (emphasis added).

Like the discriminatory Louisiana tax program—*at best*—the Local Contractor

Requirement serves as a simple measure of economic protection for contractors who maintain

their principal place of business in Gilliam County. The Pebble Springs SIP Agreement recites

that its purpose is to create jobs and reduce unemployment in Gilliam County. CSMF ¶ 1,

Barnes Decl. Exh. A. In addition, Minutes entitled "In the Matter of Public Hearing Re: SIP

with Pebble Springs Wind, LLC" dated October 1, 2008 (the "October 1, 2008 Minutes")

specifically report on the public hearing held regarding the Pebble Springs SIP Agreement and

the County's final approval of that agreement. The October 1, 2008 Minutes state that the

County's purpose for the Local Contractor Requirement was to ensure use of local contractors:

> In response to questions about local hiring practices it was
> explained the bidding requirements refer to local contractor
> preference and that Gilliam County's emphasis is on using local
> contractors and thus the bidding requirement language in the SIP
> agreement.

CSMF ¶ 3. A "Gilliam County Connections" newsletter entitled "Judge's Jottings" dated March

2009 (the "March 2009 Judge's Jottings") written by Defendant Patricia Shaw confirms this

Page 12 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

purpose: "The court is involved with negotiations on SIP tax exemptions. Part of Gilliam County's requirement in the SIP program is that whenever possible the company use local businesses during the planning and construction process." CSMF ¶ 4.

As in *Pelican Chapter*, however, even if reducing unemployment in Gilliam County were a legitimate purpose that could justify discrimination against interstate commerce under the Commerce Clause—and it is not—Gilliam County has not produced *any* evidence to demonstrate that the Local Contractor Requirement has served, or is even likely to serve, this purpose, or that it could not be served as well by available nondiscriminatory means. *See* 128 F.3d at 918.

Notwithstanding its public statements regarding the Local Contractor Requirement, Gilliam County appears to contend (somewhat oddly) that Gilliam County in fact had *no* purpose for agreeing to condition preferential tax treatment on discriminatory restrictions on use of non-local contractors. In its Responses to AmeriTitle's First Set of Interrogatories, Gilliam County refused to proffer *any* purpose for the discriminatory Local Contractor Requirement, much less a legitimate one. CSMF ¶ 5. In addition, Gilliam County appears to contend that it did not even consider the effects on interstate commerce or whether it could serve any legitimate government purpose by available nondiscriminatory means. *See id.* In its Responses, Gilliam County seems to be attempting to escape the fatal constitutional problems with the Local Contractor Requirement by contending that Pebble Springs, not Gilliam County, was the entity which ultimately put pen to paper and drafted the SIP Agreement. *Id.* But such a contention, even if true, cannot save the Local Contractor Requirement. It does not matter for constitutional purposes *who* did the actual drafting. What matters is that that it is a condition imposed in a contract executed by Gilliam County as a condition for receipt of preferential tax treatment under the Act.

By imposing—or agreeing to impose—the Local Contractor Requirement as a condition for preferential tax treatment under the Pebble Springs SIP Agreement, there can be no dispute

that Gilliam County knowingly violated the Commerce Clause. Any contention that Gilliam County did not "draft" the Local Contractor Requirement is legally irrelevant. *See, e.g., Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (explaining that "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requirement of a causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."). The undisputed evidence, ranging from the Pebble Springs SIP Agreement itself to the October 1, 2008 Minutes and the March 2009 Judge's Jottings shows that it was *Gilliam County's* emphasis on requiring local contractors that led to the inclusion of the Local Contractor Requirement in the Pebble Springs SIP Agreement.

In short, no matter how Gilliam County may attempt to characterize the Local Contractor Requirement, it affirmatively discriminates—on its face and in practical effect—against interstate commerce and lacks any legitimate governmental purpose. Accordingly, partial summary judgment should be granted declaring the Local Contractor Requirement to be an invalid, unconstitutional form of simple protectionism under the Commerce Clause.

(3)     **The "Market Participant Exception" does not apply because Gilliam acted solely in its governmental capacity, *not* as a buyer or seller**

To the extent that Gilliam County may attempt to invoke the "Market Participant Exception" to save the Local Contractor Requirement, that narrow doctrine is wholly inapplicable here. This exception "differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant; only the former is subject to the limitations of the negative Commerce Clause." *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 592 (1997) (quoting *New Energy Co. of Indiana v. Limbach*, 486 U.S. at 277, 108 S.Ct. at 1809-1810 (1988)); *see also White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204, 208 (1983) (Boston

Page 14 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

participated in the construction industry by funding certain public projects); *Reeves, Inc. v. Stake*, 447 U.S. 429, 436-437 (1980) (South Dakota participated in the market for cement as a seller of the output of the cement plant that it owned and operated). For purposes of analysis under the Commerce Clause, a State acting in its proprietary capacity *as a purchaser or seller* may "favor its own citizens over others." *Camps Newfound/Owatonna*, 520 U.S. at 592-93 (internal quotation marks omitted).

There can be no valid argument that Gilliam County was acting as any kind of market participant—either as a purchaser or a seller—when it entered into the Pebble Springs SIP Agreement. As the terms of that agreement amply demonstrate, Gilliam County acted squarely within its governmental capacity by negotiating and executing it. Thus, just as in *Pelican Chapter*, the Market Participant Exception cannot save the Local Contractor Requirement. 128 F.3d at 910 (explaining that the market participant exception was inapplicable where the Louisiana tax program had "the effect of subsidizing the initiation, relocation or expansion of industry, as do many dispositions of the tax laws").

## B.    The Local Contractor Requirement Also Violates The Equal Protection Clause

For the same reasons that the Local Contractor Requirement violates the Commerce Clause, it also violates the Fourteenth Amendment's guarantee of equal protection.

The Equal Protection Clause provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.[7] The first step in an equal protection analysis is to identify the State's classification of groups. *Nordyke v. King*, 563 F.3d 439, 463 (9th Cir. 2009). Once the plaintiff establishes governmental classification, it is necessary to identify a similarly situated class against which the plaintiff can be compared. *Id.*

---

[7] The Equal Protection Clause applies to State action. Gilliam County's implementation of the Oregon Enterprise Zone Act by imposing conditions on the receipt of tax benefits in the Pebble Springs SIP Agreement plainly constitutes State action under the Equal Protection Clause. *See, e.g., Regents of University of California v. Bakke*, 438 U.S. 265, 340 (1978) ( reviewing state action that expressly classified applicants by race under the Equal Protection Clause).

Page 15  - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The goal of identifying a similarly situated class is to isolate the factor allegedly subject to impermissible discrimination by State action. *Id.* The similarly situated group is the control group. *Id.*

Even if the most lenient measure of scrutiny applies here—the rational basis test—the Local Contractor Requirement cannot withstand analysis under the Equal Protection Clause. Under rational basis review, State action resulting in differing treatment of those similarly situated will pass constitutional muster only if it is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

The Ninth Circuit has unequivocally held that "mere economic protectionism for the sake of economic protectionism is irrational with respect to determining if a classification survives rational basis review. . . . [E]conomic protectionism for its own sake, regardless of its relation to the common good, cannot be said to be in furtherance of a legitimate governmental interest." *Merrifield v. Lockyer*, 547 F.3d 978, 991 n.5 (9th Cir. 2008). The panel in *Merrifield* explained that its decision was not an attempt elevate judicial economic theory over that of legislative bodies, but rather to enforce the Equal Protection Clause's core prohibition against irrational State action:

> No sophisticated economic analysis is required to see the pretextual nature of the state's proffered explanations . . . . We are not imposing our view of a well-functioning market on the people of [this state]. Instead, we invalidate only the [decisionmaking body]'s naked attempt to raise a fortress protecting [one subsection of an industry at the expense of another similarly situated] . . . .

*Merrifield*, 547 F.3d at 992 (alteration in original; quoting *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002)).

The impermissible discrimination in this case is the classification of businesses based on where they maintain their principal place of business—*i.e.*, their "residency." The Local Contractor Requirement treats "local" businesses—those maintaining their principal place of business in Gilliam County—differently from businesses who maintain their principal place of

Page 16 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

business elsewhere. Title companies who are legally authorized to do business in Gilliam County constitute the relevant control group in this case. There can be no doubt that Local Contractor Requirement treats such similarly situated title companies differently.

All other qualities of a bid being equal, the Local Contractor Requirement mandates that Pebble Springs accept higher bids from so-called "local contractors" over lower bids (up to ten percent lower) from "non-local" contractors.

To withstand constitutional scrutiny, at a minimum, the discriminatory classification must be rationally related to a legitimate State interest. But, as described above in the Commerce Clause analysis, Gilliam County cannot identify *any* legitimate governmental purpose for the Local Contractor Requirement. Instead, at best, its purpose is simple economic protectionism. As in *Merrifield* and *Craigmiles*, the Local Contractor Requirement is an attempt to raise a fortress protecting one subsection of an industry at the expense of another similarly situated. Such irrational State action violates the Equal Protection Clause.

C.    <b><u>Gilliam County Also Exceeded Its Statutory Authority And Acted Contrary To An Express Prohibition In The Act's Implementing Regulations</u></b>

The Oregon Enterprise Zone Act and its implementing regulations very clearly preclude Counties from attempting to achieve the Act's purpose through "[e]xplicit bias against anyone's rights or access to the privilege of employment, such as specifying residency-based hiring criteria proscribed by OP-8236, Oregon Attorney General (April 20, 1995)." OAR 123-023-1300 instructs Counties as follows:

> (1) Prospective Applicants and County/local governments shall consider creative and cooperative means to promote gainful work for persons already residing in the proximate area or region of the Approved Project for:
>
> (a) Jobs associated with the applicable facility or operations; and
>
> (b) Persons employed in the construction or installation of property or by other types of contractors, vendors or suppliers related to the project or its operation.

Page 17 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

(2) County/local governments shall incorporate such means in a policy and standards for the designation of an SIZ, as otherwise permissible and administrable, in relation to OAR 123-023-3100.

(3) Such means shall not create any:

(a) Undue burden on the Applicant, relative to the nature, needs or competitiveness of the Approved Project; or
(b) *Explicit bias against anyone's rights or access to the privilege of employment, such as specifying residency-based hiring criteria proscribed by OP-8236, Oregon Attorney General (April 20, 1995).*

(Emphasis added).

Contrary to OAR 123-023-1300, the Local Contractor Requirement conditions receipt of preferential tax treatment on explicit bias against non-local contractors solely based on their "residency." Thus, for the same reasons that Gilliam County violated the Commerce and Equal Protection Clauses by including the Local Contractor Requirement in the Pebble Springs SIP Agreement, Gilliam County exceeded its authority under the Act. The Local Contractor Requirement must, therefore, also be declared to be an illegal, *ultra vires* act.

**D.    The Unconstitutional And Illegal Local Contractor Requirement Also Constitutes "Improper Means," An Element Of AmeriTitle's Claim For Intentional Interference With Prospective Economic Relations**

A claim for intentional interference with economic relations requires proof of six elements: "(1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means *or* for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 321 Or. 532, 535 (1995).

The element of "improper means" is established by violation of "some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law . . . ." *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999) (citing *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 209-10 (1978). As discussed above, by

Page 18 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

including the Local Contractor Requirement in the Pebble Springs SIP Agreement, Gilliam

County violated the Commerce and Equal Protections Clauses in the United States Constitution,

and committed an illegal, *ultra* vires act. As a matter of law, therefore, Gilliam County used

"improper means" for purposes of AmeriTitle's claim for intentional interference with

prospective economic relations.

### V.     CONCLUSION

For the foregoing reasons, AmeriTitle respectfully asks this Court to grant its Motion for

Partial Summary Judgment and rule as a matter of law as follows:

1.     On its face, the Local Contractor Requirement violates the Commerce Clause

because, without any legitimate governmental purpose, it affirmatively penalizes interstate

commerce by favoring local businesses at the expense of "non-local" businesses.

2.     As applied to the undisputed facts of this case, the Local Contractor Requirement

violates the Commerce Clause because, without any legitimate governmental purpose, it

affirmatively prevents AmeriTitle from doing business related to the Projects with Pebble

Springs in favor of a "local" title company.

3.     The Local Contractor Requirement violates the Equal Protection Clause because it

facially discriminates against similarly-situated, "non-local" businesses without any rational

basis.

4.     As applied to the undisputed facts of this case, the Local Contractor Requirement

violates the Equal Protection Clause because it discriminates against AmeriTitle (as well as all

other "non-local" title companies) without any rational basis.

5.     By including the Local Contractor Requirement in the Pebble Springs SIP

Agreement, Gilliam County exceeded its authority under the Oregon Enterprise Zone Act and

Page 19 - MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
          PARTIAL SUMMARY JUDGMENT

acted contrary to an express prohibition in its implementing regulations.  Thus, the Local

Contractor Requirement is invalid as an *ultra vires* act.

6.    By including the Local Contractor Requirement in the Pebble Springs SIP

Agreement, Gilliam County used "improper means" for purposes of AmeriTitle's claim for

intentional interference with prospective economic relations.

DATED this 23rd day of June 2009.

Respectfully submitted,

G. KEVIN KIELY, OSB No. 833950
CARLA SCOTT, OSB No. 054725
GRETCHEN S. BARNES OSB No. 032697
Of Attorneys for Plaintiff AmeriTitle, Inc.

# ATTACHMENT A

Westlaw.

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)                                                Page 1

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)

Office of the Attorney General
State of Oregon

Opinion No. 8236

April 20, 1995

Jon Jaqua

This opinion responds to two questions from Jon Jaqua, Deputy Director, Economic Development Department, concerning the constitutionality of hiring requirements in the Enterprise Zone Act (Act), ORS 285.570 to 285.617.

FIRST QUESTION PRESENTED

Is ORS 285.605, which provides that an eligible business must hire a certain number of residents from a certain area in order to receive a property tax exemption under the Act, constitutional?

ANSWER GIVEN

If presented with the issue, we believe that a court would likely hold the enterprise zone hiring requirements in ORS 285.605 unconstitutional under the Privileges and Immunities Clause of the United States Constitution.

SECOND QUESTION PRESENTED

If the Act's hiring requirements are not constitutional, are there any other hiring restrictions that would be permissible?

ANSWER GIVEN

Yes. The state could condition the receipt of a tax exemption upon various hiring requirements so long as those requirements were not based on residency. Several alternatives are discussed below.

DISCUSSION

I. Enterprise Zone Statutes

The purpose of the Act is set out in ORS 285.573, which provides:

> The Legislative Assembly finds and declares that the health, safety and welfare of the people of this state are dependent upon the continued encouragement, development, growth and expansion of employment, business, industry and commerce within the state, and that there are areas in the state that need the particular attention of government to help attract private business investment into these areas. Therefore, it is declared to be the purpose of ORS 285.570 to 285.620 to stimulate employment, business and industrial growth in those areas of this state by providing assistance to businesses and industries and by providing tax incentives in those areas.

(Emphasis added.) In general, the Act's purpose is to encourage businesses to locate in the zones, thereby creating jobs and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

, · Case 2:09-cv-00318-SU    Document 13    Filed 06/23/2009    Page 28 of 36

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)                                                    Page 2

reducing unemployment. See also ORS 285.570(5), 285.575(2), 285.577(1)(e). When the enterprise zones were originally designated by the Governor, and later by the Director of the Economic Development Department, the criteria used by the department included higher than average unemployment rates and lower than average incomes in the area to be included in the zone. See ORS 284.180(1987); Or Laws 1993, ch 773, § 5; ORS 285.585(2)(c). However, there also are other criteria for designation. See OAR 123-65-010, 123-65-040 (commuting distance to nearest zone, population decline, prior economic development activities, immediate investment prospects).

In order to receive a property tax exemption under ORS 285.597, an eligible business must satisfy the hiring requirements of ORS 285.605, as follows:

1) For businesses in urban enterprise zones receiving five-year property tax exemptions, at least 50 percent of all new employees "immediately prior to being hired, shall reside within the regional or metropolitan urban growth boundary." ORS 285.605(2)(a).

**2** 2) For businesses in the Portland enterprise zone receiving five-year property tax exemptions, at least 50 percent of all new employees "are residents of the enterprise zone for a period of at least 90 days before their employment date." ORS 285.605(4)(b).

3) For businesses in the Portland enterprise zone receiving three-year property tax exemptions, at least 25 percent of all new employees "shall reside within the boundaries of the enterprise zone for a period of at least 90 days before their employment date." ORS 285.605(5)(a).

4) For businesses in nonurban enterprise zones receiving five-year property tax exemptions, at least 50 percent of all new employees "immediately prior to being hired, shall reside in the county or counties within which the enterprise zone is located." ORS 285.605(6)(a).

II. Privileges and Immunities Clause
Article IV, section 2, clause 1 of the United States Constitution, the Privileges and Immunities Clause, provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." The terms "citizens" and "residents" are interchangeable when analyzing statutes under the Privileges and Immunities Clause. United Building & Constr. Trades v. Mayor (Camden), 465 US 208, 216, 104 S Ct 1020, 79 L Ed2d 249 (1984). Thus, the United States Constitution guarantees the residents of each state the same privileges as residents of other states.

A. Privilege Covered by the Clause
The first issue is to determine whether the statutes being analyzed burden a privilege protected by the Privileges and Immunities Clause, The clause does not prohibit all discrimination against nonresidents. Rather, its primary purpose is to prevent states from enacting measures that discriminate against nonresidents "with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity." Baldwin v. Montana Fish and Game Comm'n, 436 US 371, 383, 98 S Ct 1852, 56 L Ed2d 354 (1978).

Statutes that discriminate against nonresidents "seeking to ply their trade, practice their occupation, or pursue a common calling" are within the purview of the Clause. Hicklin v. Orbeck, 437 US 518, 524, 98 S Ct 2482, 57 L Ed2d 397 (1978). Employment in private industry is a privilege covered by the Privileges and Immunities Clause. Id.; see also Camden, 465 US at 221-22.

B. Applicability of Clause to Municipal Residency Requirements
In order to receive the tax exemption, ORS 285.605 requires businesses to hire employees based not upon their residence in Oregon, but upon their residence within the zone, the urban growth boundary or the county. Therefore, the next issue is whether the Privileges and Immunities Clause applies only to state residency requirements or also to municipal residency requirements. In Camden, 465 US 208, the United States Supreme Court held that municipal residency requirements also

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00318-SU    Document 13    Filed 06/23/2009    Page 29 of 36

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)    Page 3

must comport with the Privileges and Immunities Clause. The Court concluded that a municipal ordinance requiring public works contractors to use good faith efforts to hire 40 percent of their employees from residents of the City of Camden violated the Privileges and Immunities Clause. The Court stated:

> *3 A person who is not residing in a given State is ipso facto not residing in a city within that State. Thus whether the exercise of a privilege is conditioned on state residency or on municipal residency he will just as surely be excluded.
> *****
> We conclude that Camden's ordinance is not immune from constitutional review at the behest of out-of-state residents merely because some in-state residents are similarly disadvantaged.

Id. at 217-18. See also Salem Blue Collar Workers Ass'n v. City of Salem, 832 F Supp 852, 856 (D NJ 1993) ("[O]ut-of-state residents burdened by a municipal residency ordinance must be accorded the protections of the Clause.").

C. Permissible Discrimination Against Nonresidents

However, the fact that a statute discriminates against nonresidents with respect to a protected privilege does not end the inquiry because the Privileges and Immunities Clause is "not an absolute." Toomer v. Witsell, 334 US 385, 396, 68 S Ct 1156, 92 L Ed 1460 (1948). In order for a statute that discriminates against nonresidents to withstand a challenge under the Privileges and Immunities Clause, it must pass two tests: 1) The nonresidents must constitute a peculiar source of the evil at which the statute is aimed, and 2) there must be a reasonable relationship between discrimination worked against the nonresidents and the evil that they present. Id. at 396-99.

1. Source of Evil at Which Statute is Aimed

In almost all cases challenging nonresident hiring restrictions, the courts have found that the statutes failed the first test, i.e., the nonresidents were not the source of the evil at which the statute was aimed. Discrimination is permitted only if there is a "substantial reason" to justify it, Toomer v. Witsell, 334 US at 396, and the nonresidents are "a peculiar source of the evil," Hicklin v. Orbeck, 437 US at 525.

Generally, the purpose identified by state statutes imposing nonresident hiring restrictions has been to alleviate unemployment in the state. In Hicklin v. Orbeck, 437 US 518, the Court analyzed the "Alaska Hire" statute, which imposed a preference for Alaska residents over nonresidents upon companies involved in any way with oil or natural gas development in Alaska. The purpose of the "Alaska Hire" statute was to reduce unemployment in Alaska. The Court invalidated the preference because the evidence indicated that Alaska's high unemployment rate was not due to the influx of out-of-state persons.

> Even assuming that a State may validly attempt to alleviate its unemployment problem by requiring private employers within the State to discriminate against nonresidents *** it is clear that *** Alaska Hire's discrimination against nonresidents cannot withstand scrutiny under the Privileges and Immunities Clause. *** [N]o showing was made on this record that nonresidents were "a particular source of the evil" Alaska Hire was enacted to remedy, namely, Alaska's "uniquely high unemployment." What evidence the record does contain indicates that the major cause of Alaska's high unemployment was not the influx of nonresidents seeking employment, but rather the fact that a substantial number of Alaska's jobless residents -- especially the unemployed Eskimo and Indian residents -- were unable to secure employment either because of their lack of education and job training or because of their geographical remoteness from job opportunities ***.

*4 Id. at 526-27 (citations omitted, footnote omitted).

In Robison v. Francis, 713 P2d 259 (Alaska 1986) rev'd on other grounds 777 P2d 202 (Alaska 1989), the court found unconstitutional a statute requiring public works contractors to employ 95 percent residents of Alaska where they are "available and qualified." Id. at 761 n 1. The purpose of the statute was to reduce unemployment in Alaska. However, the court accepted the findings by the trial court that there was insufficient evidence that nonresident workers were a particular source of unemployment among residents "anymore than they would be in any other state." Id. at 266. Yet, the court went ever further, questioning whether excluding nonresidents in order to increase the employment of residents could ever be justified. The court stated that:

> Restricting entry by non-residents into a job market will make more positions available to residents. It is not difficult to make a case to a sympathetic legislature, whose members are accountable only to residents, that residents are deserving of protection because some of them are unemployed. But the universality of this condition is itself a reason why it is im-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:09-cv-00318-SU    Document 13    Filed 06/23/2009    Page 30 of 36

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)                                    Page 4

permissible as a justification in privileges and immunities analysis. If every state could exclude or severely limit non-resident workers because some of its residents were unemployed our country would be "little more than a league of states" rather than "the Union which now exists." Such a result would run strongly counter to the policy of national economic unity on which the privileges and immunities clause is based.
Id. at 267-68 (citations omitted).

Whether nonresidents are a particular source of the "evil" of unemployment is, in the first instance, a factual question. First Westco Corp. v. Schl. Dist. of Philadelphia, 811 F Supp 204 (ED Pa 1993) rev'd on other grounds 6 F3d 108 (3rd Cir 1993), is instructive in this regard. The Philadelphia School District required public works contractors to hire Pennsylvania residents in order to reduce the unemployment rate among Pennsylvania construction workers. Residency was defined as living in Philadelphia for 90 days prior to hire. Both sides presented statistical evidence that showed the statute would reduce unemployment only marginally (significantly less than one percent). The court concluded that this marginal effect on the unemployment rate among Pennsylvania construction workers was proof that nonresidents were not the peculiar cause of unemployment among construction workers.

ORS 285.573 states that the "health, safety and welfare" of the citizens of Oregon require that businesses be given tax exemptions to locate in Oregon and increase employment. ORS 285.573 further states that the purpose of the Act is to encourage economic development and to raise the incomes of Oregonians. However, it is not evident that hiring nonresidents negatively impacts economic development in Oregon or reduces the income of Oregonians or that nonresidents are the cause of unemployment within enterprise zones. [FN1] Thus, we believe that the Act's discriminatory hiring requirements likely would not meet the first test for constitutionality for lack of evidence that nonresidents are the particular source of the evil at which the statute is aimed.

2. Relationship Between Discrimination and Evil at Which Statute is Aimed
*5 Even if the presence or activity of nonresidents causes or exacerbates the problem the state is trying to remedy, the second test requires there to be a reasonable relationship between the danger represented by the nonresidents as a class and the discrimination against them.

The Hicklin court found that the "Alaska Hire" statute also failed this test because the statute's discrimination against nonresidents did not bear a substantial relationship to the evil the nonresidents were said to present. 437 US at 527. The discriminatory means chosen by the state in its attempt to reach unemployment was not sufficiently tailored to achieve that end; all Alaskans, regardless of employment status, education or training received a preference over nonresidents. Thus, the court noted that a highly skilled resident who had never been unemployed would receive the same preference as a resident who was unemployed. Id.

In Robison v. Francis, the court found the "local hire law" that excluded nonresidents from public construction jobs in order to make more jobs available to Alaskans similarly flawed because it gave preferential treatment to residents who did not need it. 713 P2d at 268. See also First Westco Corp., 811 F Supp at 204 (statute not narrowly tailored because it did not require replacement of nonresidents with unemployed Pennsylvania workers).

ORS 285.605 provides an absolute preference for Oregonians over nonresidents, regardless of the employment status, training or wage of the Oregonian. If the Act's purpose is to reduce the unemployment rate in Oregon and within the enterprise zones, the statute is not narrowly tailored to do so.

III. Potential Challenges
ORS 285.605 could only be challenged under the Privileges and Immunities Clause by an individual residing outside Oregon or by an association representing individuals residing outside Oregon. See Camden, 465 US at 217. A business could not challenge the statute. W.C.M. Window Co., Inc. v. Bernardi, 730 F2d 486, 492-93 (7th Cir 1984) (only "natural persons" protected by Privileges and Immunities Clause).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Once the challenger shows that ORS 285.605 discriminates explicitly against nonresidents in employment, the state would have the burden of justifying the discrimination. Thus, the state would need to demonstrate: (1) the particular evil the Act is intended to address, (2) that the nonresidents constitute the peculiar source of that evil, and (3) that the Act's discriminatory hiring policy bears a substantial relationship to that evil. Id. at 498; 1st Westco Corp., 811 F Supp at 207.

An argument might be made that the Oregon statute should survive a constitutional challenge because it does not require private employers to hire residents, but merely encourages them to do so through tax benefits. There is no doubt that a state lawfully may provide tax incentives to private businesses to locate in particular areas of the state. Rather, the issue is whether the state may compel private businesses to discriminate against nonresidents as a condition for receiving tax benefits. We have not found any court cases that address this issue. Nevertheless, we do not believe that the state may use tax incentives to achieve indirectly the type of discriminatory hiring that the constitution prohibits the state from doing directly. See Gomillion v. Lightfoot, 364 US 339, 347, 81 S Ct 125, 5 L Ed2d 110 (1961) ("When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right."); see also Allen v. County School Board of Prince Edward County, 198 F Supp 497 (ED Va 1961) (county tax credits to aid private racially segregated schools unlawful).

*6 Forty states and the District of Columbia have enterprise zone programs, 17 of which condition enterprise zone benefits on the businesses' hiring residents. Although no enterprise zone statute has been challenged under the Privileges and Immunities Clause, the cases discussed above involve hiring provisions similar to those in Oregon's Enterprise Zone Act. ??hart listing these states and the relevant statutes is attached as an Appendix. If Oregon's Enterprise Zone Act were challenged, we seriously doubt that the state could successfully defend its discriminatory hiring provisions.

IV. Possible Amendments to Act to Avoid Unconstitutionality

Although the court cases strongly suggest that discriminatory hiring against nonresidents is unconstitutional, we believe that the state could condition the receipt of tax exemptions on the eligible businesses' using certain hiring requirements so long as those requirements were not based on residency. For example, the Act could require a business not only to enter into a First-Source Hiring Agreement between the business and a publicly funded job training provider, ORS 285.570(5), but also to hire a certain number of qualified workers who are referred pursuant to that Agreement.

Alternatively, the hiring requirement might be based upon a certain percentage of the employees' meeting one or more of the following criteria:

1) Receiving unemployment insurance or other public benefits, such as Aid to Dependent Children,

2) participating in a publicly funded job training program,

3) being "unemployable," as determined by traditional standards or a lack of basic skills,

4) being an "eligible participant," as defined by the Job Training Partnership Act, Pub L No. 99-570, § 4, or a "dislocated worker," as defined by the Economic Dislocation and Worker Assistance Adjustment Act, Pub L No. 100-418, § 301,

5) having an annual income less than a specified amount prior to being hired, or

6) having a physical or mental handicap.

We believe that such an approach, if carefully and narrowly crafted to remedy an identified "evil," would likely withstand a facial challenge under the Privileges and Immunities Clause, although that conclusion is not without some uncertainty. See Hicklin v. Orbeck, 437 US at 528 ("Even if a statute granting an employment preference to unemployed residents or to resi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)                                    Page 6

dents enrolled in job-training programs might be permissible, Alaska Hire's across-the-board grant of a job preference to all Alaskan residents clearly is not.").

Theodore R. Kulongoski
Attorney General

[FN1] In United Building & Constr. Trades v. Mayor, 465 US 208, 1045 S Ct 1020, 79 L Ed2d 249 (1984), the City of Camden argued that the evils at which the 40 percent resident preference were directed were: High unemployment (11.6 percent compared to 7.6 percent for the county), a decrease in city population and a decrease in the number of businesses located within the city, which was decreasing the tax base. The city also contended that nonresidents were ""living off"Camden without "living in" Camden. The Court remanded the case to the lower court to determine whether these reasons were substantial and whether the non-residents were the peculiar source of the evil to be cured by the ordinance. The case was settled so we do not know whether Camden met its burden of proof.

Significantly, in Robison v. Francis, 713 P2d 259 (Alaska 1986), the lower court had made extensive findings about the Alaska economy: Alaska's population was increasing faster than other states, property values were increasing in Alaska, Alaska was not depressed, the economy was expanding and employment was increasing, the construction industry was strong, construction employment fluctuated during the year, the state was the largest purchaser of construction services, unemployment in rural areas of Alaska exceeded unemployment in urban areas, there was more construction in urban than rural areas, and rural Alaskans had less training in construction. Similar to the findings made in Robison the Oregon Progress Board has collected data indicating that the population in Oregon is increasing, property values are increasing, the Oregon economy is expanding, employment is increasing and economic development is greater in the Willamette Valley than elsewhere in the state. Thus, it may be particularly difficult to establish that nonresidents are a particular source of the "evil" at which the Act is aimed. See, Day, Hiring Preference Acts: Has The Supreme Court Rendered Them Violations Of The Privileges And Immunities Clause?, 54 Fordham L Rev 271, 289-91(1985).

APPENDIX

| STATE | RESIDENCY REQUIRED FOR TAX RELIEF | STATUTORY SECTION |
|-------|-----------------------------------|-------------------|
| AB | YES | ACA § 41.23.30 |
| AZ | YES | ARS § 141.1525 |
| AR | YES | ACA § 15-4-807 |
| CA | YES | CAL. GOV'T CODE § 7082 |
| CO | NO | CRSA § 39-30-103.5 |
| CN | NO | CCSA § 32.70 |
| DE | ? | DCA § 31-? |
| DC | NO | DCCA § 5-1404 |
| FL | YES | FSA § 220.182(10) |
| GA | YES | GCA § 91A-362.1 |
| HA | YES | HRS § 209E-9, § 209E-4(b)(1) |
| IL | NO | 220 ILCS § 519-222.1 |
| IN | YES | IC § 6-3-2-8, IC § 6-3-3-10 |
| KA | NO | KSA § 74-50, 113 |
| KN | NO | KRS § 154.45-001 |
| LA | YES | LSA § 51.1787 |
| ME | NO | MRSA § 30A-5251 |

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)                                    Page 7

| MD | NO  | MDSA § 43A-5304 |
|----|-----|-----------------|
| MI | YES | MCLA 125.2121(6)(b).(c) |
| MN | NO  | MSA § 469.171 |
| MS | NO  | MSA § 57-61-9 |
| MO | YES | VAMS 135.225(2), 135.230, 135.235 |
| NE | YES | NRS § 52:27H-62 |
| NV | YES | NRS § 274.220 |
| NJ | NO  | NJRS § 52:77H-62 |
| NM | NO  | NMSA § 5-9-6 |
| NY | NO  | NY 15 ECON. DEV. LAW § 230 |
| OH | YES | RC § 5709.64 |
| OK | NO  | 62 OSA § 690.4 |
| OR | YES | ORS § 285.323(3), § 285.330(5)(c) |
| PA | NO  | 72 PS § 4729 |
| RI | YES | RI § 42-64.3-3.5 |
| SC | NO  | SCCA § 41-43-150 |
| SD | NO  | SDCL 13-28-103 |
| TN | NO  | TCA § 13-14-101 |
| TX | NO  | VTCA 10-2303.401 |
| UT | YES | UCA § 9-2-412 |
| VA | NO  | VCA § 59.1-279 |
| WI | NO  | WSA § 560.70, § 560.765 |
| WV | NO  | WVCA § 5B-2B-2(C) |

47 Or. Op. Atty. Gen. 243, 1995 WL 242546 (Or.A.G.)
END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# ATTACHMENT B

**123-023-1300**

**Local Hiring**

For purposes of ORS 285C.603:

(1) Prospective Applicants and County/local governments shall consider creative and cooperative means to promote gainful work for persons already residing in the proximate area or region of the Approved Project for:

(a) Jobs associated with the applicable facility or operations; and

(b) Persons employed in the construction or installation of property or by other types of contractors, vendors or suppliers related to the project or its operation.

(2) County/local governments shall incorporate such means in a policy and standards for the designation of an SIZ, as otherwise permissible and administrable, in relation to OAR 123-023-3100.

(3) Such means shall not create any:

(a) Undue burden on the Applicant, relative to the nature, needs or competitiveness of the Approved Project; or

(b) Explicit bias against anyone's rights or access to the privilege of employment, such as specifying residency-based hiring criteria proscribed by OP-8236, Oregon Attorney General (April 20, 1995).

Stat. Auth.: ORS 285A.075 & 285C.615(7)
Stats. Implemented: ORS 285C.603, 285C.609 & 285C.623
Hist.: EDD 10-2004, f. & cert. ef. 5-24-04; EDD 25-2008, f. 7-31-08, cert. ef. 8-1-08

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **MEMORANDUM OF LAW IN SUPPORT**

**OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** on:

Richard J. Kuhn
HOFFMAN HART & WAGNER, LLP
1000 SW Broadway Ste 2000
Portland, OR 97205
rjk@hhw.com
(503) 222-4499
(503) 222-2301 Fax

      Of Attorneys for Defendants Gilliam County, Frank Bettencourt, Michael Weimar and Judge Patricia Shaw

[✓]    **ELECTRONIC MAIL – CM/ECF** notice of electronic filing.

[✓]    by **MAILING** a full, true and correct copy thereof in a sealed, postage-paid envelope, addressed as shown above, and deposited with the U.S. Postal Service at Portland, Oregon, on the date set forth below.

[ ]    by causing a full, true and correct copy thereof to be **HAND-DELIVERED** to the party, at the address listed above on the date set forth below.

[ ]    by causing a full, true and correct copy thereof by **ELECTRONIC MEANS** to the party, at the party's last known email address listed above on the date set forth below.

[ ]    by sending a full, true and correct copy thereof via **OVERNIGHT COURIER** in a sealed, prepaid envelope, addressed to the Party as shown above, at the last known address of the attorney, on the date set forth below.

[ ]    by **FAXING** a full, true and correct copy thereof to the party, at the fax number shown above, which is the last-known fax number for the party's office, on the date set forth below.

DATED this 23rd day of June 2009.

CARLA SCOTT, OSB No. 054725
Of Attorneys for Plaintiff AmeriTitle, Inc.

Page 1 – CERTIFICATE OF SERVICE