Richard J. Kuhn, OSB No. 812850
E-mail: rjk@hhw.com
Marjorie A. Speirs, OSB No. 783888
E-mail: ms@hhw.com
HOFFMAN, HART & WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

     Of Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| AMERITITLE, INC., an Oregon corporation <br><br>     Plaintiff, <br><br>     v. <br><br> GILLIAM COUNTY; FRANK BETTENCOURT, in his official capacity as Gilliam County Commissioner; MICHAEL WEIMAR, in his official capacity as Gilliam County Commissioner; and PATRICIA SHAW, in her official capacity as Gilliam County Judge, <br><br>     Defendants. | No. 09-CV-318-SU <br><br> DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................ 1

II.   Statement of Facts ............................................................................................ 2

III.   The Court Lacks Jurisdiction to Consider Plaintiff's Declaratory Judgment Claims ........... 10

   A.   Introduction ................................................................................................ 10

   B.   Plaintiff's Requests for Declaratory Relief Are Moot. ................................. 10

   C.   Plaintiff Lacks Standing to Seek Declaratory Relief .................................... 11

      1.   There is No Issue of Sufficient Immediacy and Reality to Warrant the Issuance of Declaratory Relief ................................................................................. 12

      2.   There is No Substantial Controversy Between Parties with Adverse Interests .............. 12

         a.   Plaintiff is Not a "Contractor" Within the Meaning of the Local Contractor Clause  13

         b.   Even if Plaintiff Were a "Contractor" Within The Meaning of the Local Contractor Clause, The Clause Does Not Apply Here Because There Was no Need to Select a Title Company Subsequent to the Execution of the SIP Agreement .......................... 15

      3.   Plaintiff Cannot Demonstrate That Its Alleged Injury Was Caused by the Local Contractor Clause ......................................................................................... 16

         a.   Plaintiff Cannot Prove That It Would Have Been Awarded the Title Work But/For the Local Contractor Clause ........................................................................... 16

         b.   The Clause in Question is Not Mandatory ................................................. 17

         c.   The Clause is Not Enforceable Because the Agreement Provides Limited and Ineffectual Consequences for Its Breach ....................................................... 18

IV.   Even if the Court Has Jurisdiction to Consider Plaintiff's Declaratory Judgment Claims, These Claims Lack Merit ........................................................................... 18

   A.   The Oregon Attorney General Opinion Relied Upon by Plaintiff is Not Helpful to Its Cause ................................................................................................... 18

   B.   The Local Contractor Clause – Whether on Its Face or as Applied--Does Not Violate the Commerce Clause of the United States Constitution .......................... 20

Page ii - DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

C.  The Local Contractor Clause – Whether on Its Face or as Applied -- Does Not Violate the Equal Protection Clause of the United States Constitution ............................................... 21

D.  The County Did Not Exceed it Powers in Including the Local Contractor Clause .......... 23

V.  Because the Court Has No Jurisdiction Over Plaintiff's Federal Claims, It Lacks Discretion to Consider Plaintiff's State Claim for Interference With Economic Relations ................... 24

VI.  Even if the Court Has Jurisdiction Over This Claim, Plaintiff is Not Entitled to Summary Judgment on the "Improper Means" Element of His Interference with Economic Relations Claim ........................................................................................................................................ 25

VII.  Conclusion ......................................................................................................................... 26

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

# TABLE OF AUTHORITIES

## CASES

*Associated General Contractors of California, Inc. v. City and County of San Francisco*,
    813 F.2d 922 (9th Cir. 1987) ................................................. 23

*Bender v. Williamsport Area School Dist.*,
    475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed 2d 501, *rehearing den.* 476 U.S. 1132 (1986) .......... 10

*Blair v. Shanahan*,
    38 F.3d 1514 (9th Cir. 1994), *cert. den.*, 514 U.S. 1066 (1995)................................ 11

*Chew v. Gates*,
    27 F.3d 1432 (9th Cir. 1994) ................................................. 4

*D'Lil v. Best Western Encina Lodge & Suites*,
    538 F.3d 1031 (9th Cir. 2008), *cert. den.*, 2009 WL 273213 (2009)................................. 11, 12

*Eagle Industries, Inc. v. Thompson*,
    321 Or. 398, 900 P.2d 475 (1995) ................................................. 13

*Fuller v. County of Orange*,
    276 Fed. Appx. 675 (9th Cir. 2007) ................................................. 4

*Gator.com Corp. v. L.L. Bean, Inc.*,
    398 F.3d 1125 (9th Cir. 2005) ................................................. 10

*Kentucky v. Graham*,
    473 U.S. 159 (1985)................................................. 4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)........................................ 11

*Matter of Compensation of Hunter*,
    54 Or. App. 718, 635 P.2d 1371 (1981)................................................. 19

*McGanty v. Staudenraus*,
    321 Or. 532, 901 P.2d 841 (1995) ................................................. 25

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008) ................................................. 22, 23

*Parks v. Watson*,
    716 F.2d 646 (9th Cir. 1983) ................................................. 23

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

*Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards,*
128 F.3d 910 (5th Cir. 1997) ............................................................. 20

*Scott v. Pasadena Unified School Dist.,*
306 F.3d 646 (9th Cir. 2001), *cert. den.*, 538 U.S. 1031 (2003)................................. 12

*Shell Oil Co. v. City of Santa Monica,*
830 F.2d 1052 (9th Cir. 1987), *cert. den.*, 487 U.S. 1235 (1988)............................... 19

*Skysign International, Inc. v. City and County of Honolulu,*
276 F.3d 1109 (9th Cir. 2002) ............................................................. 24

*Yogman v. Parrott,*
325 Or. 358, 937 P.2d 1019 (1997) ........................................................ 13

## RULES AND STATUTES

28 U.S.C. § 1367(a) ............................................................................. 24

28 U.S.C. § 2201 ................................................................................ 10

42 U.S.C. § 1983 ................................................................................. 1

OAR 123-023-1300 ............................................................................. 24

*former* ORS 285.605 .......................................................................... 18

ORS 285C.050-285C.250 ...................................................................... 19

ORS 285C.285 ................................................................................... 19

ORS 285C.600- 285C.626 ..................................................................... 19

ORS 285.605 .................................................................................... 19

ORS 701.002(5) ................................................................................. 14

ORS 701.068 .................................................................................... 14

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

**OTHER**

47 Or. Op. Atty. Gen. (1995) .......................................................................................... 19

U.S. Const., Art I, § 8, cl. 3............................................................................................ 20

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

I.    <u>Introduction</u>.

Plaintiff's complaint seeks money damages pursuant to 42 U.S.C. § 1983 for denial of equal protection and violation of the commerce clause of the United States Constitution, and pursuant to a pendant state claim for interference with economic relations.  (Compl. ¶¶ 31-49).  Plaintiff's complaint also seeks a declaratory ruling that paragraph 4.h (local contractor clause) of the October 1, 2008, Strategic Investment Program Agreement (SIP Agreement or Agreement) between Pebble Springs Wind, LLC and Gilliam County (the County) is "unenforceable both on its face and as applied" because the County exceeded its authority by including a local contractor provision in the SIP Agreement and because the local contractor requirement violates the equal protection and commerce clauses of the United States Constitution.  (Compl. ¶ 52).   Plaintiff also seeks injunctive relief "as justice requires, including but not limited to an Order striking the Local Contractor Requirement from the Pebble Springs SIP Agreement and enjoining Defendants from including that provision in any other SIP agreement."  (Compl., Prayer, ¶ 4).

Plaintiff seeks summary judgment on its claims for declaratory relief and on one element of its claim for interference with economic relations.  Plaintiff does not seek summary judgment on its pendent state claim, beyond the one element addressed by its motion, or on its section 1983 damage claims.  Thus, plaintiff does not seek a ruling on any of its claims for damages in its motion for summary judgment.

Simultaneously with this response to plaintiff's motion, defendants are filing a motion for summary judgment seeking summary judgment on all of plaintiffs' claims against them.

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

II.     Statement of Facts.

Gilliam County Title Company (GCT) is a title company located in Condon, Oregon owned by Hollie Winslow. (CSMF, ¶ 1).[1]  Ms. Winslow began working for GCT in 1989 and purchased the company in 1998. (*Id.*). GCT has had a title plant (comprehensive collection of recorded documents) for Gilliam County, as required by Oregon statute, for over forty years. (*Id.*). Ms. Winslow and her employees perform title searches and issue reports. (*Id.*). First American Title Insurance (First American) underwrites all of the title insurance policies for GCT's clients. (CSMF ¶2).

Plaintiff AmeriTitle, a subsidiary of Jeld-Wen, is a title company with multiple offices in Oregon and Washington. (CSMF ¶3). Craig Trummel was the General Manager of Amerititle's office in The Dalles, Oregon at the time of these events. (*Id.*). Amerititle works with various underwriters who provide title insurance for its clients. (*Id.*). AmeriTitle does not have an office in Gilliam County, and did not have a title plant for Gilliam County until August 1, 2008. (*Id.*).

Until AmeriTitle opened its title plant, GCT was the only title company with a title plant for Gilliam County and performed all title searches and reports for First American in the County. (CSMF ¶ 4).

Pebble Springs Wind, LLC (Pebble Springs) is an affiliate of Iberdrola Renewables, Inc. (Iberdrola). (CSMF ¶ 5). Iberdrola was formerly known as PPM Energy, Inc. (PPM). (*Id.*).

---

[1]  References to "CSMF" are to the concise statement of material facts filed in support of defendants' motion for summary judgment, and incorporated by reference into defendants' response to plaintiff's concise statement of material facts.

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

In January 2005, GCT began performing title work for a wind project (the project) that PPM wished to build in Gilliam County. (CSMF ¶ 6). The project consisted of three facilities to be located on three separate pieces of property, known as Leaning Juniper I (LJ I), Leaning Juniper II (LJ II) and Pebble Springs. (*Id*.). LJ II was divided into phases A and B. (*Id*.). The Pebble Springs and LJ I properties were each owned by one party. The LJ II A and B properties were owned by multiple parties. (*Id*.).

GCT performed the title work on all of these projects for PPM with the understanding that it would not be paid until the title policy issued for each of the projects. (CSMF ¶ 7). Both Ms. Winslow and Mr. Trummel agree that this is the custom in the industry. (*Id*.). Amerititle has worked on projects for Iberdrola and has never been paid until the policy issues. (*Id*.). Title companies are generally paid a percentage of the premium for the title insurance policy, according to their arrangement with their underwriter. (*Id*.).

In February 2005, GCT issued its first report on LJ I. (CSMF Decl, ¶ 8). In March 2005, GCT issued a report on a portion of the LJ IIA property. (*Id*.). In September 2005, GCT issued a preliminary title report on the Pebble Springs property and on an additional portion of the LJ IIA property. (*Id*.). In December of 2005, GCT issued its first report on LJ IIB property. (*Id*.).

In April and July 2006, First American issued policies of title insurance on the LJ I property, and GTC was paid for its work related to that property. (CSMF ¶ 9). GCT completed its work on the Pebble Springs property in May 2006, and continued to issue reports on the various LJ II A and B properties throughout 2006, 2007 and 2008. (CSMF ¶ 10).

In October 2007, Iberdrola approached the County, seeking a SIP agreement so that it could obtain a tax benefit for its wind project. (CSMF ¶ 11). Although SIP agreements reduce tax benefits to the County, the trade off is economic development within the County. (*Id*.).

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

By August 1, 2008, AmeriTitle had created a title plant for Gilliam County, and had

begun providing title services for the County from its office in The Dalles.  (CSMF ¶ 12).   Prior

to completing its title plant for Gilliam County, Ameritille could not legally have done any work

on the PPM/Iberdrola projects at issue in this case.  (*Id.*).

On October 1, 2008, Pebble Springs and Gilliam County entered into a SIP Agreement,

covering Pebble Springs, LJ II and Leaning Juniper III.  (CSMF ¶ 14). [2]  The agreement was

approved by the Gilliam County Court at a public meeting on October 1, 2008, and signed by

defendants Shaw, Bettencourt and Weimer (the individual defendants) for the County.  (*Id.*).[3]

Defendant Shaw is the County Judge, Chair of the County Court and Chief Administrative

Officer for the County.  (CSMF ¶ 15). Defendants Weimar and Bettencourt were County

Commissioners when the SIP Agreement was signed.  (*Id.*).[4]

The Agreement recited that Pebble Springs proposed to build and operate within the

County a commercial wind energy generation project which was expected to include wind

---

[2]  Leaning Juniper II and III appear to be alternative designations for what Ms. Winslow knew as
Leaning Juniper IIA and B.  Indeed, the RFP at issue in this case references Leaning Juniper IIA
and IIB, not II and III.  (Kuhn Decl. in Supp. of Def's MSJ, Exs L and M).

[3]  Plaintiff has sued each of  the individual defendants in his or her official capacity.  Official
capacity suits are another way of pleading an action against the entity of which the individual
defendant is an agent.  Where the entity receives notice and an opportunity to respond to the
official capacity suit, the "suit is, in all respects other than name, to be treated as a suit against
the entity."  *Chew v. Gates*, 27 F.3d 1432, 1446, n 15 (9th Cir. 1994)(quoting with approval from
*Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  Thus, the action is "not a suit against the
[individual defendants] personally, for the real party in interest is the entity," *i.e.*, the County.
*Fuller v. County of Orange*, 276 Fed. Appx. 675, 679, n. 1 (9th Cir. 2007)(quoting with approval
from *Graham*, 473 U.S. at 166).

[4]  Gilliam County is governed by a three-member County Court, made up of the County Judge
and two Commissioners.  (CSMF ¶ 13).

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

turbine generators, machinery and equipment, roads, substation(s), meteorological towers and an

operations and maintenance facility.  (CSMF ¶ 16).  The agreement defined the scope of the

"project" as follows:

> "The 'project' shall be comprised of wind turbine generators which may be
> installed or placed in service in phases or stages in Gilliam County during the term
> of this Agreement, as well as all associated property * * *, including without
> limitation roads and civil construction work, underground and overhead
> electrical lines and pole structures, high-voltage transmission lines and
> pole structures, meteorological monitoring towers, an operations and maintenance
> facility, grid interconnection facilities, one or more substations, land, and associated
> supporting infrastructure and facilities.  Unless otherwise determined by
> Pebble Springs LLC as described below, the Project further includes repairs,
> replacements, repowering, modernization, renovations and remodelling of
> such property made during the term of this Agreement. * * * The project shall
> include facilities commonly known as the 'Pebble Springs,' 'Leaning Juniper II,'
> and 'Leaning Juniper III' wind power projects * * *."

(Kuhn Decl. in Supp. of MSJ, Ex. G, p. 2, ¶ 1).

The agreement also includes the following paragraph, referred to in this memorandum as

the local contractor clause:

> "h.  <u>Bidding Requirements</u>.  For contractors selected subsequent to the
> execution of this agreement, Pebble Springs LLC shall invite contractors to
> participate in competitive bidding.  When considering competitive bids, Pebble
> Springs LLC will give qualified local contractors preference of up to ten
> percent (10%) for contract values less than $250,000 and up to five percent
> (5%) for contract values $250,000 and higher.  For the avoidance of doubt, a
> preference of up to 10% (or 5%) means that Pebble Springs LLC may accept an
> otherwise acceptable bid from a local contractor up to 110% (or 105%) of the
> lowest acceptable bid, and the contract value will be determined by the lowest
> acceptable bid.  A contractor shall be considered local if it certifies in its bid
> application that its principal place of business has been in Gilliam County for
> one year or longer from the date of the bid.  Pebble Springs LLC may rely on
> the certification for purposes of this provision and shall have no duty to
> investigate the accuracy of the certification.  Pebble Springs LLC will inform
> prospective bidders that local contractors will be given the foregoing
> preferences.  Pebble Springs LLC may require a performance and payment
> bond in form and surety satisfactory to Pebble Springs LLC in the amount of

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

the contract price. Notwithstanding anything in this section 4.i. (*sic*), Pebble
Springs LLC shall not be obligated to select any contractor unless the
contractor has demonstrated to Pebble Springs LLC's satisfaction in Pebble
Springs LLC's sole discretion that the contractor meets the qualifications set
forth in the bid request. In the event the County Commission feels a local
contractor was not selected, but should have been, then IBERDROLA LLC and
the County will meet to seek to resolve the issue."

(*Id*., p. 6).

The local contractor clause was included at the request of Jesse Gronnen, Iberdrola's

Director of Business Development, who negotiated for Iberdrola. (CSMF ¶ 18).[5]  This clause is

not included in any other County SIP contract. (CSMF ¶ 20). Although the County has a policy

of encouraging the hiring of local businesses (*Id*.), the individual defendants all understood that

they could not, by law, require Pebble Springs to hire local contractors. (*Id*.).

Judge Shaw did not consider a title company to be a contractor and assumed that the title

work was done before the contract was ever signed. (CSMF ¶ 21). She understood "local

contractors" to be contractors that were "working in the process of building * * * wind turbines,

construction companies." (*Id*.). Commissioner Weimar did not think about title companies in

considering the agreement because wind companies hire title companies long before the County

even knows about the wind projects. (*Id*.). Commissioner Bettencourt did not consider the local

title company to be a contractor. (*Id*.).

As of October 1, 2008, the date the SIP agreement was signed, GCT had issued 15

reports on the various properties incorporated in the project, and the title work on the project was

approximately 75 percent complete. (CSMF ¶ 22). After October 1, 2008, GCT continued to

issue reports on the LJ II properties, as requested by Iberdrola and First American. (*Id*.).

---

[5]  The County's negotiating team was made up of its legal counsel Will Carey, its wind
consultant Paul Woodin, defendant Shaw, and her assistant Leanne Durfey. (CSMF ¶ 19).

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

On February 18, 2009, Iberdrola issued a request for proposal (RFP) to AmeriTitle and First American Title for title work on the LJ II property, stating that "It is Iberdrola Renewable' policy to procure title insurance services and products competitively for the benefit of reducing the cost of the title policy for our wind projects." (CSMF ¶ 23). The RFP did not advise the respondents that preference would be given to local contractors, nor did it ask the respondents to certify that their principal place of business had been in Gilliam County for at least a year. (CSMF ¶ 24).

As of the date the RFP issued, GCT had completed approximately 90 percent of the title work on the LJ II property. (CSMF ¶ 25). Title reports had issued on all but one of the dozen properties encompassed in LJ II. The only work remaining was preparation of a report on the one remaining property and updates on the properties for which reports had already issued. (*Id.*).

When Iberdrola issued the RFP, it did not tell Mr. Trummel how much title work had already been done on the project. (CSMF ¶ 26). It was his understanding that no title work had been done by GCT. (*Id.*). Although Amerititle had done title work for Iberdrola in the past, at the time that the RFP went out, AmeriTitle did not have an ongoing relationship with Iberdrola with respect to this project. (*Id.*). Iberdrola did not promise Amerititle that if it responded to the RFP, it would be awarded the title work. (*Id.*).

In late February 2009, Both AmeriTitle and First American responded to the RFP with proposals. (CSMF ¶ 27). AmeriTitle proposed to use Stewart Title or First American as underwriters. (*Id.*). First American proposed itself as underwriter. (*Id.*). The cost of title insurance quoted by the two companies was the same. (CSMF ¶ 28). All title companies in Oregon are bound by a rate manual known as OTIRO. (*Id.*). Because rates are set, there is no

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

way in Oregon for a title company to do anything with regard to pricing to make itself more

competitive. (*Id*.).

Ms. Winslow has never been asked to submit a bid or proposal for a title project. (CSMF

¶ 29). Mr. Trummel had never been asked to submit a bid or proposal for title work before the

Iberdrola RFP. (*Id*.). On past projects for Iberdrola, someone would call him or send him an e-

mail asking him to start on the work, without asking for a price quote. (*Id*.).

On March 10, 2009, Robert Sargeant, counsel for Iberdrola, sent an e-mail to

AmeriTitle's General Manager, Craig Trummel, stating:

> "It looks like Iberdrola is going with First American and Gilliam County Title
> for the Leaning Juniper IIA and IIB projects. The reason is the county's local
> participation requirement. If AmeriTitle had an office in the county and would
> otherwise satisfy these requirements, the discussion may have been different.
> While my client will not be able to work with you on this project, I encourage
> you to correct this situation so that you will be able to compete for future
> business."

(CSMF ¶ 30).

On March 19, 2009, Iberdrola accepted First American's proposal. (CSMF ¶ 31). GCT

continued to issue reports on LJ II at First American's request. (*Id*.). GCT updated the reports it

had already prepared and sent to Iberdrola and First American, and turned over the updated

reports to First American. (*Id*.).

Had Iberdrola awarded the work to AmeriTitle, AmeriTitle could not simply have

performed the ten percent of work remaining to be done; it would have had to begin from scratch

the title work that GCT had already done. (CSMF ¶ 32). AmeriTitle would not have used

GCT's work, and GCT would have expected to be paid for the work already completed. (*Id*.).

By April 2009, GCT had completed all of the title work on LJ II, with the exception of

on-going updates. (CSMF ¶ 33).

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

PPM/Iberdrola has had the use of the reports prepared by GCT since 2005. (CSMF ¶ 34). A company wishing to create a wind project needs title reports long before it is ready to proceed with its project. (*Id*.). The reports are used to check on ownership and encumbrances in order to determine whether a project is feasible, and for leases with landowners. (*Id*.). They are also used for surveying, for the placement of wind towers and other equipment, and to determine whether easements are required over neighboring properties. (*Id*.).

Although GCT's work on the three pieces of property is complete, title policies have not issued for Pebble Springs and LJ II. (CSMF ¶ 35). GCT has, therefore, not yet been paid for its work on these properties. (*Id*.). GCT will be paid upon issuance of the policies. (*Id*.).

AmeriTitle has performed no work to date on Pebble Springs, LJ I or LJ II, and at the time of his September 16, 2009 deposition, Mr. Trummel continued to have no idea of the extent of title work remaining to be done. (CSMF ¶ 36).

Neither Ms. Winslow nor Mr. Trummel has ever been asked to obtain a performance and payment bond or a surety bond. (CSMF ¶ 37). Mr. Trummel understands that a performance and payment bond is something that is utilized by contractors, that is, people who build or remodel things. (*Id*.).

Mr. Trummel does not know whether anyone at the County had any information about Iberdrola and AmeriTitle having an ongoing title company relationship, nor does he have information suggesting that the County wanted to intentionally deny title work to AmeriTitle. (CSMF ¶ 38).

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

III.     The Court Lacks Jurisdiction to Consider Plaintiff's Declaratory Judgment Claims.

    A.     Introduction.

Federal courts are not courts of general jurisdiction.  They have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.  *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed 2d 501, *rehearing den*. 476 U.S. 1132 (1986).  The obligation to notice defects in jurisdiction assumes a special importance when a constitutional question is presented.  *Id*.

The court lacks jurisdiction over plaintiff's declaratory relief claims for one or more of the following reasons.

    B.     Plaintiff's Requests for Declaratory Relief Are Moot.

Article III requires that a live controversy persist throughout all stages of the litigation and where this condition is not met, the case has become moot and its resolution is no longer within the court's constitutional purview.  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005).  Article III limitations on federal court jurisdiction are not relaxed in the declaratory judgment context, but are instead incorporated in 28 U.S.C. § 2201, the statute authorizing declaratory relief.  *Id*. at 1129. [6]

The test for mootness in the context of a case where a plaintiff seeks declaratory relief is whether the facts alleged under all of the circumstances show that there is a substantial

---

[6]  28 U.S.C. § 2201 provides in relevant part:

> "a) In a case of actual controversy within its jurisdiction, * * *, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

controversy between parties having adverse legal interest of sufficient immediacy and reality to warrant issuance of a declaratory judgment.  *Id*. at 1129.  The requisite case or controversy is absent where a plaintiff is no longer able to engage in the activity concerning which it is seeking declaratory relief.  *Id*.

Here, as set forth in the statement of facts, the title work for the LLJ II property was completed before plaintiff filed this lawsuit.  Therefore, any declaration issued by the court would have no impact on AmeriTitle, *i.e*., the court cannot issue any declaration that would result in AmeriTitle obtaining the work that it sought by means of its response to the RFP from Iberdrola.  Thus, plaintiff's request for declaratory relief is moot.  See, e.g., *Blair v. Shanahan*, 38 F.3d 1514, 1519-20 (9th Cir. 1994), *cert. den*., 514 U.S. 1066 (1995)(where the plaintiff had previously been a panhandler, but had obtained employment and stopped begging for money by the time he filed suit, plaintiff lacked personal stake necessary to litigate declaratory judgment action invalidating California statute banning aggressive panhandling).

C.     Plaintiff Lacks Standing to Seek Declaratory Relief.

Standing is an essential part of the case-or-controversy requirement of Article III.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008), *cert. den.*, 2009 WL 273213 (2009).  Whether a party has standing to pursue its claim is a question of law.  *Id*. The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Where, as here, the plaintiff's alleged injury arises from the government's allegedly unlawful regulation of someone else, standing is not precluded, but is substantially more difficult to establish.  *Id*. at 562.

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

In order to meet the burden of establishing standing, a party must show three things: (1) the party must have suffered an injury in fact, *i.e.*, an invasion of legally protected interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *D'Lil*, 538 F.3d at 1036. Each of these elements must be supported in the same way as any other matter in which the plaintiff bears the burden of proof and the evidence relevant to the standing inquiry consists of the facts as they existed at the time the plaintiff filed the complaint. *Id*.

Under the Declaratory Judgment Act, a plaintiff must establish standing by showing that there is a substantial controversy, between parties having adverse interest, of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 658 (9th Cir. 2001), *cert. den.*, 538 U.S. 1031 (2003).

      1.     There is No Issue of Sufficient Immediacy and Reality to Warrant the Issuance of Declaratory Relief.

As set forth in section B above, the title work on LJ II was complete by the time plaintiff filed its lawsuit. Thus, there is no controversy between AmeriTitle and the County of sufficient immediacy to warrant the issuance of a declaratory judgment.

      2.     There is No Substantial Controversy Between Parties with Adverse Interests.

Plaintiff's arguments are all based upon the local contractor provision of the SIP agreement between Pebble Springs (Iberdrola) and the County. That provision, however, presents no controversy between plaintiff and the County because it does not apply in the facts of this case.

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

a.    <u>Plaintiff is Not a "Contractor" Within the Meaning of the Local Contractor Clause</u>.

All of plaintiff's arguments assume that the local contractor provision applies to title companies. The local contractor clause covers "competitive bidding" for "contractors." The term "contractors" is not defined in the Agreement. Under Oregon law, the first step in interpreting a contract is to determine whether the contract is ambiguous. *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019 (1997). Whether a contract is ambiguous is a question of law for the court. *Id*., quoting with approval from *Eagle Industries, Inc. v. Thompson*, 321 Or. 398, 405, 900 P.2d 475 (1995). Words or phrases in a contract are considered in the context of the entire agreement. *Eagle Industries*, 321 Or. at 406. In the absence of an ambiguity, the court construes the contract as a matter of law. *Id*.

When considered in the context of the entire agreement, the term "contractor" is unambiguous and does not contemplate the hiring of title companies. As set forth in the statement of facts, the Agreement, by its own terms, covers a project which encompasses the installation and placement of wind turbine generators, machinery and equipment, road, substations, meteorological towers and an operations and maintenance facility, as well as repairs, replacements, repowering, modernization, renovations and remodelling of these components during the duration of the Agreement. (Kuhn Decl., Ex. G, p. 2, ¶ 1, *supra*., pp. 5-6).

The local contractor provision must be read in the context of this statement of the scope of the project, which limits the project to the installing, placing, repairing and replacing of the components of Pebble Springs' wind energy generation project. Given the scope of the project covered by the Agreement, the term "contractor" cannot be read as including title companies.

This conclusion is also supported by the clause's provision that "Pebble Springs may accept an otherwise acceptable bid from a local contractor up to 110% (or 105%) of the lowest

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

acceptable bid." (Kuhn Decl., Ex. G, ¶ 4.h). This provision makes clear that the clause can have

no application to title companies which are all bound by a fixed rate schedule. (CSMF ¶ 28).

Finally, the local contractor clause includes the following provision: "Pebble Springs

may require a performance and payment bond in form and surety satisfactory to Pebble Springs

in the amount of the contract price." (Kuhn Decl., Ex. G, ¶ 4.h). There is no statutory

requirement that an Oregon title company provide any kind of a bond for its services, nor has

AmeriTitle or GCT ever been asked to provide a bond. By contrast, a surety bond is a

requirement for a contractor's license in Oregon. ORS 701.068 provides that an applicant for

issuance or renewal of a contractor license "shall file with the Construction Contractors Board a

surety bond with one or more corporate sureties authorized to do business in this state [in an

amount provided by statute]."

As used in ORS chapter 701, "contractor" means:

> "(a) A person who, for compensation or with the intent to sell, arranges
> or undertakes or offers to undertake or submits a bid to construct, alter, repair,
> add to, subtract from, improve, inspect, move wreck or demolish, for another,
> any building, highway, road, railroad, excavation or other structure, project,
> development or improvement attached to real estate, or to clean or service
> chimneys, or to do any part thereof."

ORS 701.002(5).

Sections (b) – (f) of the same statute include persons engaging in certain other building,

harvesting and inspecting work. Persons providing title reports or insurance are not included in

the definition. Thus, under no circumstances could a title company be an applicant for a

contractor's license or be required to provide a bond. Indeed, plaintiff's representative Craig

Trummel understands that bonds are only required for people who "build or remodel things."

(CSMF ¶ 37).

In context, it is clear that "contractors" as used in the local contractor clause are construction contractors. The clause, therefore, has no application to the hiring of title companies. It follows that the independent contractor clause cannot turn AmeriTitle and defendants into parties with adverse interests for purposes of standing.

Further, all three individual defendants testified that they did not believe the independent contractor clause applied to title companies at the time that they signed the agreement. (CSMF ¶ 21). They further testified to their understanding that they could not force anyone to hire local contractors (CSMF ¶ 20), thus indicating a complete lack of intention to enforce the clause as to any sort of contractors. (In any event, as argued below, the clause is not enforceable as written.)

> b.     <u>Even if Plaintiff Were a "Contractor" Within The Meaning of the Local Contractor Clause, The Clause Does Not Apply Here Because There Was no Need to Select a Title Company Subsequent to the Execution of the SIP Agreement</u>.

Even if the local contractor clause applied to title companies, it still would not apply in the circumstances of this case. The clause applies to "contractors selected subsequent to the execution of this agreement." Here, although the RFP was issued after the execution of the agreement, there was no basis to hire a title company at this point. The title work on LJ II was 90 percent done by the time the RFP issued, and, in order to do the ten percent of the title work remaining, a newly-hired company would have had to re-do the 90 percent of the work already completed by GCT, for which Iberdrola was already obliged to pay GCT. It is unknown why Iberdrola chose to issue an RFP for work already completed and already used by it. The fact that Iberdrola issued the RFP, however, does not change the fact that there was no basis for seeking a title company to perform work that had already been accomplished. Whatever Iberdrola's reason

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

may have been for seeking proposals for work already done, plaintiff may not position itself to sue the County by relying upon a clause that, in actuality, had no application here.

   3.   <u>Plaintiff Cannot Demonstrate That Its Alleged Injury Was Caused by the Local Contractor Clause.</u>

As set forth above, in order for plaintiff to have standing there must be a causal link between its alleged injury—loss of the title work for the project—and the local contractor clause. Plaintiff can demonstrate no such link.

   a.   <u>Plaintiff Cannot Prove That It Would Have Been Awarded the Title Work But/For the Local Contractor Clause.</u>

Mr. Trummel acknowledged at his deposition that at the time the RFP went out, plaintiff did not have an ongoing relationship with Iberdrola on this project, and that Iberdrola did not promise Ameritile that it would be awarded the title work if it responded to the RFP.  Indeed, Iberdrola had every financial incentive to stay with GCT and First American, given that 90 percent of the work on LLJ II had already been completed at the time the RFP issued.

Although Iberdrola's counsel informed plaintiff that the reason Iberdrola had decided to go with go with First American and GCT was "the county's local participation requirement," he did not state that AmeriTitle would have gotten the work if not for this requirement.  (Kuhn Decl., Ex. P).  He, instead, stated:  "If AmeriTitle had an office in the county and would otherwise satisfy these requirements, the discussion <u>may</u> have been different." (*Id*.).  This equivocal statement will not support the conclusion that plaintiff <u>would have been awarded</u> the title work but/for the local contractor clause.  There is, in fact, no evidence to support such a conclusion.

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

b.    <u>The Clause in Question is Not Mandatory</u>.

Even if plaintiff could demonstrate that it would have been awarded the title work in the absence of the Local Contractor Clause, it still could not prove causation.  The Local Contractor Clause provides that Pebble Springs "<u>shall invite</u> contractors to participate in competitive bidding," and that when considering competitive bids, Pebble Springs "<u>will give</u> qualified local contractors" certain preferences.  (Kuhn Decl., Ex. G, ¶ 4.h)(emphasis added).  The next sentence clarifies the preference, stating:  "<u>For the avoidance of doubt</u>, a preference of up to 10% (or 5%) means that Pebble Springs LLC <u>may accept</u> an otherwise acceptable bid from a local contractor up to 110% (or 105%) of the lowest acceptable bid * * *."  (*Id.*)(emphasis added).

Thus, the only thing mandated by the clause is the inviting of competitive bids.  Because the "will give" language of the preference is clarified to "may accept," the preference is not mandatory.  Plaintiff's statement that pursuant to the local contractor clause, "Pebble Springs *must* accept" the bid of a local contractor is simply not correct.  (Pl's Mem. in Supp. of MSJ, p. 6)(italics in original).

The preference is not mandatory for the additional reason that the clause states that "[n]otwithstanding anything in this section * * *, Pebble Springs LLC shall not be obligated to select any contractor unless the contractor has demonstrated to Pebble Springs LLC's satisfaction <u>in Pebble Springs LLC's sole discretion</u> that the contractor meets the qualifications set forth in the bid request."  (Kuhn Decl., Ex. G, ¶ 4.h).

In light of this language, together with the "may accept" language discussed above, application of the clause cannot be viewed as mandatory, and Iberdrola's decision not to hire plaintiff cannot, therefore, be viewed as being <u>mandated</u> by the clause.  Thus, to the extent that Iberdrola believed it was bound to award the work to First American, it was simply incorrect and

Page 17 - DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

there is no causal link between the clause as actually written and plaintiff's failure to obtain the title work. Plaintiff's quarrel, if any, is not with the language of the clause, but with Iberdrola.

           c.      <u>The Clause is Not Enforceable Because the Agreement Provides Limited and Ineffectual Consequences for Its Breach.</u>

The sole remedy provided by the Agreement for violation of the Local Contractor Clause is as follows: "In the event the County Commission feels a local contractor was not selected, but should have been, then IBERDROLA LLC and the County will meet to resolve the issue." (Kuhn Decl., Ex. G, ¶ 4.h). Thus, had Iberdrola awarded the title work to plaintiff, the County (had defendants believed that the clause applied to title work, which they did not) could have required Ibedrola to attend a meeting, but could have done nothing had the meeting been unsuccessful. In these circumstances, plaintiff cannot demonstrate that the clause "caused" its injury.

For all of the above reasons, this court lacks jurisdiction to consider plaintiff's declaratory judgment claims, both because the claims are moot and because plaintiff lacks standing to bring its constitutional challenges.

IV.     <u>Even if the Court Has Jurisdiction to Consider Plaintiff's Declaratory Judgment Claims, These Claims Lack Merit.</u>

           A.     <u>The Oregon Attorney General Opinion Relied Upon by Plaintiff is Not Helpful to Its Cause.</u>

Plaintiff apparently relies upon a 1995 Oregon Attorney General Opinion, which opined that, if presented with the issue, the Oregon Supreme Court would likely hold *former* ORS 285.605 unconstitutional under the privileges and immunities clause of the United States

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

Constitution. (Pl's Mem. in Supp. of MSJ, p. 3).[7]  It is not clear, however, how it is that plaintiff

believes this opinion is of assistance to its position. In fact, for several reasons, it is not.

First, plaintiff alleged no privileges and immunities challenge to the local contractor

clause, nor could it have since, as pointed out in the Attorney General Opinion, only natural

persons may bring a privilege and immunities challenge. 47 Or. Op. Atty. Gen. 243, 249 (1995).

*Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052 (9th Cir. 1987), *cert. den.*, 487 U.S. 1235

(1988).[8]

Second, opinions of the Oregon Attorney General are not binding on Oregon Courts, and

are, therefore, not binding upon this court. *Matter of Compensation of Hunter*, 54 Or. App. 718,

723, n.3, 635 P.2d 1371 (1981).

Third, the Attorney General considered former ORS 285.605, which provided local

residency <u>requirements</u> for employees hired by businesses in enterprise zones.[9]  47 Or. Op. Atty.

Gen. at 244. As set forth above, the local contractor clause contains no mandatory or

enforceable residency requirements. Thus, even if plaintiff, which is not a natural person, could

have mounted a privileges and immunities clause challenge, the Attorney General Opinion

would not apply to the facts of this case.

---

[7]  The privileges and immunities clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states."

[8]  Plaintiff's footnote 6 discussing the privileges and immunities clause is, therefore, irrelevant. (Pl's Mem. in Supp. of MSJ, p. 9, n. 6).

[9]  Plaintiff conflates enterprise zones and strategic investment zones. (Pl's Mem. in Supp. of MSJ, pp. 1-2). The Enterprise Zone Act is currently set forth at ORS 285C.050 – 285C.250. ORS 285C.285. The strategic investment program is currently set forth at ORS 285C.600-285C.626.

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

B.    The Local Contractor Clause – Whether on Its Face or as Applied--Does Not Violate the Commerce Clause of the United States Constitution.

The commerce clause to the United States Constitution grants Congress the power "[t]o regulate commerce with foreign Nations, and among the several states, and with the Indian Tribes." Art I, § 8, cl. 3.   Plaintiff correctly presents the general law regarding application of the commerce clause. (Pl's Mem. in Supp. of MSJ, pp. 8-9).  The law as outlined by plaintiff, however, does not support its commerce clause challenge.  This is because the local contractor clause is not mandatory and does not, as stated by plaintiff, provide that Pebble Springs "must accept an otherwise acceptable bid from a local contractor up to 110% (or 105%) of the lowest bid." (Pl's Mem. in Supp. of MSJ, p. 11)(emphasis added).  Instead, the clause states that Pebble Springs "may accept" such a bid.  (Kuhn Decl., Ex. G, ¶ 4.h).

Further, as set forth above, application of the local contractor preference is, by its terms, entirely within Pebble Springs' discretion.  In this respect the contract clause at issue here is distinguishable from the state preference rule that was held to violate the commerce clause in *Pelican Chapter, Associated Builders & Contractors, Inc. v. Edwards*, 128 F.3d 910 (5th Cir. 1997). (Pl's Mem. in Supp. of MSJ, p.p. 10-11).   The rule in question in *Pelican* "condition[ed] the exemption of new or added manufacturing establishments from state property taxes upon the preferential use of Lousiana construction products and labor when they are on a parity with those produced by another state." 128 F.3d at 917.   The "may accept" language and the provision for Pebble Springs' discretion make clear that the SIP Agreement is not conditioned upon local hiring.

Further, as also set forth above, the only consequence for failing to hire a local contractor where the County believes one should have been hired, is a mandatory meeting to resolve the issue.  Since application of the clause is within Pebble Springs' discretion and since there is no

Page 20 - DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

consequence for the failure to hire a local contractor, the clause does not amount to economic protectionism and cannot be viewed as violating the Commerce Clause on its face.[10]

The clause also fails to violate the commerce clause as applied to AmeriTitle. Again, as set forth above, the clause does not apply to title companies. In addition, there is no evidence that Iberdrola would have hired AmeriTitle to do the approximately ten percent of the title work left to be done at the time the RFP issued. Finally, the individual defendants did not view the clause as applying to title companies when they signed the agreement and have no intention of enforcing the clause against anyone.

C.    The Local Contractor Clause – Whether on Its Face or as Applied -- Does Not Violate the Equal Protection Clause of the United States Constitution.

Plaintiff argues that the independent contractor clause violates the equal protection clause of the Fourteenth Amendment to the United States Constitution by classifying businesses according to the place where they maintain their principal place of business. (Pl's Mem. in Supp. of MSJ, pp. 15-16). As set forth in section A above, however, the local contractor clause does not, in fact, distinguish between local contractors and contractors that do not have their principal place of business in Gilliam County in any enforceable fashion. It does not, as asserted

---

[10]  Because the agreement does not amount to economic protectionism, plaintiff's arguments regarding the "purpose" for the clause are irrelevant. (Pl's Mem. in Supp. of MSJ, pp. 12-13). In any event, defendants are unable to locate in the Agreement the statement of purpose referred to by plaintiff. (*Id*. p. 12). If plaintiff is referring to the first "Whereas" paragraph of the agreement, this paragraph describes the purpose of the statutory SIP program. Further, the quotation from the October 1, 2008 minutes begs the question of what is meant by a "contractor." (*Id*.). The quotation from "Judge's Jottings," speaks of using local contractors "whenever possible." This does not indicate an intent to impose a mandatory requirement. Finally, the County did not refuse to give a purpose for the local contractor clause in its response to plaintiff's interrogatories, but instead stated simply that the clause came from Iberdrola. (Barnes Decl., Ex. D). That the clause was requested by Iberdrola is not irrelevant, as suggested by plaintiff. (Pl's Mem. in Supp. of MSJ, p. 13). It demonstrates that the County had no motivation to harm plaintiff or any other entity.

Page 21 - DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

by plaintiff, "mandate" that Pebble Springs accept higher bids from local contractors. (Pl's Mem. in Supp. of MSJ, p. 17). Further, the only consequence for failure to hire a local contractor— a meeting— is no consequence at all. Thus there are no enforceable classifications to be compared for equal protection purposes. This case is, therefore, distinguishable from *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008), relied upon by plaintiff. (Pl's Mem. in Supp. of MSJ, p. 16).

The regulatory scheme held to violate the Equal Protection Clause in *Merrifield* clearly required those engaged in live capture of three types of vertebrate pests to obtain a pest control license, while exempting those engaged in the live capture of all other vertebrate pests from the licensing requirement. 547 F.3d at 982, 991. The local contractor clause, by contrast, does not create any enforceable classifications. In addition, *Merrifield* did not involve a local contractor preference. As set forth below, such a preference has been upheld in this circuit.

The local contractor clause also fails to violate Equal Protection Clause as applied to AmeriTitle. If there are no enforceable classifications, plaintiff's rights under the Equal Protection Clause cannot have been violated. Further, as set forth above, the clause does not apply to title companies. In addition, there is no evidence that Iberdrola would have hired AmeriTitle to do the approximately ten percent of the title work left to be done at the time the RFP issued. Finally, the individual defendants did not view the clause as applying to title companies when they signed the agreement and have no intention of enforcing the clause against anyone.

Even if the local contractor clause could be viewed as creating enforceable classifications, the clause still does not violate the equal protection clause. Plaintiff correctly applies the "rational basis" test to the classifications that it claims were created by the statute.

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

(Pl's Mem. in Supp. of MSJ, p. 16). *Parks v. Watson*, 716 F.2d 646, 654 (9th Cir. 1983)(absent a suspect classification or the infringement of a fundamental right, the equal protection clause is offended only if the governmental entity's different treatment of the classifications bears no rational relationship to a legitimate governmental purpose). Plaintiff's argument, however, that application of the rational basis test must lead to the conclusion that the local contract provision violates the equal protection clause is without merit.

As this court stated in *Merrifield*, under rational basis review, an equal protection challenge must fail as long as there is any reasonably conceivable state of facts that could provide a rational basis for the challenged law. 547 F.3d at 989. Encouraging businesses to locate in the County is just such a rational basis. This court, in *Associated General Contractors of California, Inc. v. City and County of San Francisco*, 813 F.2d 922 (9th Cir. 1987), held that a city ordinance providing preferences for locally-owned businesses did not violate the equal protection clause. The court noted, among other things, that encouraging businesses to locate and remain in the city through the provision of minimal good faith preferences to local businesses in the awarding of City contracts was a legitimate consideration, noting that the U.S. Supreme Court has recognized that it is generally legitimate for a governmental entity to encourage businesses to move into the jurisdiction. 813 F.2d at 943.

Thus, even if the local preference clause, which gives a preference to businesses located in the county, were held to create enforceable classifications, it must withstand plaintiff's equal protection challenge.

D.   The County Did Not Exceed it Powers in Including the Local Contractor Clause In Its SIP Agreement with Pebble Springs.

Plaintiff argues that the County exceeded its powers by including the local contractor clause in the SIP Agreement. In particular, plaintiff argues that the local contractor clause

HOFFMAN, HART & WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

violates OAR 123-023-1300 which provides that county governments shall promote gainful

work for persons already residing in the proximate area or region of an approved project, but

may not create any "explicit bias against anyone's rights or access to the privilege of

employment, such as specifying residency-based hiring criteria proscribed by OPP-8236, Oregon

Attorney General (April 20, 1995)."

For all of the reasons set forth in sections B and C above, the County did not violate OAR

123-023-1300 by agreeing to include the local contractor provision in the SIP Agreement.  As

already fully argued, the local contractor provision is neither mandatory nor enforceable; it

cannot, therefore, be viewed as creating an explicit bias based upon residency.

V.    <u>Because the Court Has No Jurisdiction Over Plaintiff's Federal Claims, It Lacks
      Discretion to Consider Plaintiff's State Claim for Interference With Economic Relations</u>.

28 U.S.C. § 1367(a) provides:

"Except as provided in subsections (b) and (c) or as expressly provided
otherwise by Federal statute, <u>in any civil action of which the district courts have
original jurisdiction</u>, the district courts shall have supplemental jurisdiction
over all other claims that are so related to claims in the action within such
original jurisdiction that they form part of the same case or controversy under
Article III f the United States Constitution. * * *."

Here, as argued above, the court does not have jurisdiction over plaintiff's federal

declaratory judgment claims because those claims are moot and because plaintiff lacks standing.

The court, therefore, lacks discretion to hear plaintiff's state law claim.  *Skysign International,*

*Inc. v. City and County of Honolulu*, 276 F.3d 1109, 1118, n. 7 (9th Cir. 2002)(where plaintiff

lacks standing to bring its federal claim, the district court lacks subject matter jurisdiction over

that claim and has no discretion to hear the state law claim).

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

VI.  <u>Even if the Court Has Jurisdiction Over This Claim, Plaintiff is Not Entitled to Summary Judgment on the "Improper Means" Element of His Interference with Economic Relations Claim</u>.

To state a claim for intentional interference with economic relations, a plaintiff must allege the following elements:  (1) the existence of a professional or business relationship including a contract or prospective economic advantage, (2) intentional interference with that relationship, (3) by a third party, and (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.  *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841 (1995).

Here, plaintiff seeks summary judgment on the "improper means" element, arguing that the County used an improper means because it violated the commerce and equal protection clauses of the United States Constitution, and committed an illegal *ultra vires* act.  (Pl's Mem. in Supp. of MSJ, pp. 18-19).  For all of the reasons set forth above, defendant neither violated these clauses nor committed an *ultra vires* act.  There is no basis, therefore, for granting plaintiff summary judgment on the "improper means" element of its intentional interference claim.[11]

////

////

////

////

////

////

---

[11]  Even if plaintiff could succeed in proving this element of his intentional interference claim, he cannot prove the other elements of his claim.  See Defs' Mem. in Supp. of MSJ, Section IX, pp. 4-6).

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**

VII.    Conclusion.

For all of the above reasons, defendants respectfully request that the court deny plaintiff's motion for partial summary judgment in its entirety.

Respectfully submitted this 27th day of October, 2009.

HOFFMAN HART & WAGNER, LLP

By:    /s/ Marjorie A. Speirs
       Marjorie A. Speirs, OSB No. 783888
       ms@hhw.com
       Richard J. Kuhn, OSB No. 812850
       rjk@hhw.com
       Of Attorneys for Defendants
       Trial Attorney:  Richard J. Kuhn

Page 26 - DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**HOFFMAN, HART & WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile:  (503) 222-2301**